## CAMPBELL *v.* EMPIRE LAND COMPANY.

One who sells land, whether at public or private sale, as described by a plat showing the subdivisions of the land to be sold, and purporting to offer for sale all of the lots embraced in the entire tract of land for

Appeal and Error, 4 C. J. p. 834, n. 65.

Fraud, 27 C. J. p. 72, n. 54.

Trial, 38 Cyc. p. 1569, n. 6.

Vendor and Purchaser, 39 Cyc. p. 1253, n. 99; p. 1275, n. 17; p. 1276, n. 23; p. 1404, n. 86.

residential purposes only, is, in equity and good conscience, bound by the representations made to induce purchasers. In this case there was evidence that the defendant was induced to examine and finally to purchase certain lots in subdivision A, being lots numbers 17 to 24, inclusive, known as Ormewood Heights, upon the representations contained in a plat of said subdivision entitled: "The addition with a future. Ormewood Heights. A Restricted Residential Section. A short distance from Grant Park and adjoining Ormewood Park." There is also evidence that there was originally a fixed scheme by which all the lots in this subdivision (including those which the defendant in this case was induced to purchase) were devoted and restricted to residential uses; and there being in the evidence deeds executed by the plaintiff, tending to show not only the original purpose and scheme of the seller, but also that, at the time the defendant was induced to purchase, the general purpose and scheme had been abandoned, an issue of fraud was presented in this case which should have been determined by a jury. The testimony in behalf of the defendant would have authorized the jury to find in favor of a rescission of the entire contract of purchase, on ·the ground of fraud. It was therefore error to direct a verdict in favor of the plaintiff, and the court erred in overruling the motion for a new trial.

No. 5334. FEBRUARY 24, 1927.

Complaint. Before Judge E. D. Thomas. Fulton superior court. January 11, 1926.

The Empire Land Company filed suit against Mrs. I. G. Campbell, alleging that on October 2, 1918, the defendant agreed to purchase from the plaintiff "all that tract of land lying and being in Fulton County, Georgia, and being known [as] lots numbers 17 to 24, both inclusive, in block A of Empire Land Company's subdivision known as Ormewood Heights, recorded in the office of the clerk of superior court of Fulton County, Georgia," agreeing to pay therefor $1,600, upon terms of $20 cash and 79 monthly payments of $20 each, for which payments the defendant executed and delivered to said company 79 notes, bearing interest at the rate of 7 per cent. per annum, and expressly agreeing that, time being of the essence of the contract, if any two of said notes shall not be paid when due, the holder shall have the option to declare the entire series due and payable. On said day the plaintiff executed to defendant a bond for title binding itself to convey the described property to defendant upon the payment of said purchase-money notes. The petition alleged demand and refusal to pay, and prayed judgment for $1,160, the amount of unpaid notes, with interest.

In her answer the defendant admitted the execution of the notes, but alleged as follows: Because of a breach by plaintiff of the

contract in connection with which the notes sued upon were given, she is not indebted to it, but on the contrary the plaintiff is indebted to her in the sum of $3,400. The property described was purchased by defendant to be used for the purpose of constructing thereon a residence, which purpose was known to the plaintiff. In order to induce the defendant to purchase said lots, the plaintiff, through its duly authorized agent, made the following material representations: "(1) That the other lots belonging to petitioner, located in the subdivision of its property adjoining and adjacent to the tract purchased by defendant, would be sold only for the erection of homes which would cost not less than $1,500; and (2) that the buildings erected upon such other lots would be restricted to residences." There was a breach by the plaintiff of its contract in both respects named, in that it has permitted the erection, on a number of the lots in said subdivision, of homes costing less than $1,500, and particularly in that in January, 1922, it sold to one Turner a lot located immediately adjacent to the property purchased by defendant, and permitted him to construct thereon a dairy barn capable of housing forty head of cattle, and so situated as to render the property purchased by defendant unfit for residential purposes. At the time of the breach of said contract the premises were worth $5,000, but by reason of the construction of said barn the same are not now worth more than $1,600. The representations as above set out, on which she relied in purchasing said property, were made by plaintiff wilfully and fraudulently. Defendant is willing to surrender to plaintiff the land in question, upon repayment to her of the amount paid and the sums expended by her in placing upon the same valuable improvements. She prays for judgment for $3,400, and that it be set off against the claim asserted by plaintiff. By an amendment the defendant set up, that the property alleged to have been sold to Turner was in fact sold to Mrs. R. C. Turner; that the sale was made by petitioner with the knowledge that it was the purpose of the grantee to erect and conduct a dairy barn upon said lot; "that, being informed of this purpose, defendant immediately objected and requested petitioner not to permit the erection of said barn, but notwithstanding this request, and the advice of defendant given to petitioner at the time that she would consider the erection of said barn a breach of petitioner's contract to convey title to the

property sold to defendant for residential purposes, the defendant permitted the erection of said barn and has permitted the use of the same continuously since for the conduct of a dairy, and has made to said Mrs. R. C. Turner an absolute fee-simple conveyance of said lot without including therein the restriction, easements, or encumbrances referred to;" that in permitting the erection of said barn and in making the conveyance to Mrs. Turner, without restriction, the petitioner has placed it beyond its power to convey to defendant, in accordance with its contract, title to the property purchased by defendant, carrying with it the encumbrances set forth as against the other lots in the said subdivision, thus breaching the contract to convey title. Defendant prays, in the event the court should entertain the view that damages can not be recovered by the defendant as prayed, that the contract be rescinded, and that she recover of petitioner the amount of money paid by her to petitioner, with interest.

At the trial, A. D. Thompson, in behalf of the plaintiff, testified in effect that he was assistant secretary-treasurer of the Empire Land Company, and executed the bond for title held by the defendant. He had no connection with the negotiations of the sale to her, and did not know anything about the statements that were made in connection with the sale. Mr. Lynes made the sale. At the time the defendant objected to the erection of the barn, the "matter" had been made to Turner, and witness did not know of anything to do. The objection was made after a contract had been made with Turner, probably after a bond for title had been given Mrs. Turner. The deed to Mrs. Turner was made since the institution of the suit. Witness did not undertake to keep Turner from erecting the barn, and did not know it was the intention of Mrs. Turner to build a barn at the time the sale to her was made; and when the objection was made, the contract was already out to deliver on payment of the money. Everybody in the subdivision was violating any restrictions that may have been placed out there, including the defendant. The conveyance to Mrs. Turner carries no restrictions, nor does the one to defendant. Witness thinks, as an original proposition, that the Empire Land Company had established restrictions in the subdivision, but does not remember. He did not have control of it in the beginning. He does not think any conveyances of lots have been made containing restrictions, but is not sure.

George Campbell, the husband of the defendant, testified: In September, 1918, he began negotiations with Mr. Lynes of the Empire Land Company, on behalf of the defendant, for the purchase of eight lots in said subdivision. He had several conversations with Lynes, one in the presence of his wife, out there on the ground, in which he used this plat. The plat carries at the top of it a statement that it is a restricted residential section. That is the identical plat that Lynes used in making the sale. Witness asked Mr. Lynes particularly at that time about the restrictions upon those other lots, "and he told me absolutely that they could not be used for anything except residential purposes. He knew it was our intention to build a little country home there. I talked it over with him fully at the time." Under present conditions the land is worth $100 per lot for farm purposes. Lynes stated to witness, at the time of the purchase, that the branch [on the rear of the property] was a clear-water branch, but witness later ascertained that drainage from cesspools was being dumped into the branch. The defendant testified that she went to the property with Lynes. He showed her the way the lines ran, the distance from the street; and she bought the lots from this map. Lynes said the lots could be sold only for residential purposes. The defendant further testified in substantiation of the allegations of fact in her answer. Testimony in behalf of both parties, as to the value of the premises and the question of damage caused by the erection of the barn, was in conflict.

In evidence appeared the notes sued upon, and the bond for title from the plaintiff, obligating it to convey to the defendant good and sufficient title to the premises upon the payment of the stipulated purchase-money. The bond for title made no reference to any plat, and contained no restrictions. The defendant introduced in evidence the plat referred to in the evidence, containing the following heading: "The addition with a future. Ormewood Heights. A restricted residence section. A short distance from Grant Park and adjoining Ormewood Park." At the bottom containing the following words: "For plats and further information see Thompson & Lynes." She introduced also certified copies of three conveyances from the Empire Land Company to purchasers in said subdivision prior to the purchase of defendant, each reciting: "Restrictions as follows: No residence shall be built on said lots

which costs less than $1,500, and that said lots can never be sold to a negro or any person of African descent." Also a copy of a bond for title executed by plaintiff, containing a similar recital, subsequent to the purchase of defendant. The court directed a verdict in favor of the plaintiff for the amount sued for. The defendant's motion for a new trial was overruled, and she excepted.

*Neufville & Neufville,* for plaintiff in error.

*Tillou Von Nunes,* contra.

RUSSELL, C. J. As appears from the foregoing statement of facts, the contract between Mrs. Campbell and the Empire Land Company was executory in its nature. The obligation of the land company to make title to Mrs. Campbell, as evidenced by its bond for title, depended upon the payment by her of the purchase-price of the land, as evidenced by the promissory notes upon which the suit was based. The contract must necessarily remain executory until it becomes executed by the payment of the notes. An executory contract, unlike an executed contract, is subject to be breached. There was evidence in this case that tended to show that the executory contract with Mrs. Campbell was breached by the Empire Land Company, who sold to Mrs. Turner, without restrictions and for the purpose of a dairy, property adjoining that which Mrs. Campbell had been induced to buy upon the distinct representation that the entire subdivision or tract of land was strictly reserved for residential purposes only. The provision with reference to the reservation of the property for residential purposes only is very material and essential; and should a jury find, as they would be authorized by the evidence to find, that the restriction to residential purposes was absolutely disregarded by the land company after Mrs. Campbell had been induced to enter the contract evidenced by her bond for title, she would be entitled to a rescission of the contract and the return of the money paid by her on the purchase-price. Were the rule otherwise, the owner of a tract of land could subdivide it into lots under a plan and pledge very favorable to its development in a particular line, and under these representations induce buyers to purchase a number of lots, and thereafter, by violating the conditions as held forth to these purchasers, and apparently selling other adjacent portions of the property for purposes which would depreciate the value of the section, be enabled to repurchase his property sold at high prices at a mere nominal

figure, and wind up by having pocketed the money of the purchasers without having really parted with any of his land.

As will be noted from the statement of facts, the time for the consummation of Mrs. Campbell's purchase by the delivery of a deed had not arrived when the breach of the provision with reference to the restriction of the tract of land to purely residential purposes took place. The case is not one of a mere breach of a bond for title, in the sense that the contract to convey title had been violated; for the bond for title was not the whole contract between the parties. The defendant's contention was that by her contract with the plaintiff she acquired the right to have all of the lots in the subdivision devoted to use for residential purposes. But the defendant also pleaded, if for any reason she was not entitled to damages, that the contract be rescinded and that she recover the amount she had paid on the purchase-price and for improvements placed upon the land, because of the fraud practiced by the plaintiff. See *Epps* v. *Waring*, 93 *Ga.* 765 (20 S. E. 645); *Leyden* v. *Hickman*, 75 *Ga.* 684.

It is no answer to the defendant's cross-action in the present case to say that she seeks the application of contradictory remedies. In our opinion the decision in *Printup* v. *Rome Land Co.*, 90 *Ga.* 180 (15 S. E. 764), controls our ruling in this case. And while in our opinion the defendant can not recover damages for the breach of the contract by way of set-off (because she can not at the same time stand upon the contract and yet repudiate it), we hold that the defendant had a right to rescind the contract and ask that she recover the money paid by her and whatever was expended for improvements by reason of the plaintiff's fraud in inducing her to enter the contract and thereby subjecting her to these useless expenditures.

So we are of the opinion that the court erred in directing a verdict, and therefore erred in overruling the motion for a new trial based upon that ground. There are other assignments of error in the motion for a new trial as amended, but these need not be considered. One of them is expressly abandoned by the plaintiff in error, and the remainder may be treated as abandoned because they are not referred to in the brief.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hines, J., dissenting.*

GILBERT, J., concurring specially. Under the pleadings and the evidence the case should have gone to the jury for a decision as to whether the plaintiff was guilty of fraud in the execution of the contract of sale, or whether the defendant was entitled to recover damages for a breach of the agreement; such damages to be set off against any recovery by the plaintiff.

BECK, P. J., dissenting. The defendant in this case agreed, on a day stated in her answer, to purchase from petitioner certain described property consisting of eight lots in a named subdivision of land known as Ormewood Heights. The defendant paid the vendor a stated amount in cash, and executed and delivered to the vendor 79 notes for the amount of $20 each, and the latter executed and delivered to defendant a bond for title. The notes and the bond for title made a complete written contract. The bond for title is conditioned to make to the defendant "a good and sufficient title to the premises described," upon payment of the notes. The bond for title contained no restrictions. There are no such allegations of fraud in the answer, nor proof of such fraud upon the part of the vendor, as would authorize a court of equity to decree a rescission of the trade; and consequently I can not agree with the holding of the majority that "the testimony in behalf of the defendant would have authorized the jury to find in favor of a rescission of the entire contract of purchase, on the ground of fraud," and that "it was therefore error to direct a verdict in favor of the plaintiff." The fraud or deceit that would authorize a rescission of this contract must have entered into the contract itself, and must have been coexistent with the act of making the contract, or pre-existent thereto on the part of the vendor. The fact that, after the contract had been executed and partially performed, the vendor, contrary to its promises, permitted houses other than residences to be erected by other purchasers on lots in the same subdivision would not authorize a rescission of the contract. Did the defendant in this case in her answer plead fraud that would entitle her to a decree of rescission of the contract? Her plea in that respect, as appears from the statement of facts, is, that in order to induce defendant to purchase said lots the plaintiff (the vendor), through its duly authorized agent, made the following representations: "(1) That the other lots belonging to petitioner, located in the subdivision of its property adjoining and adjacent to the tract pur-

chased by defendant, would be sold only for the erection of homes which would cost not less than $1,500; and (2) that the buildings erected upon said other lots would be restricted to residences." The defendant alleged a breach by the petitioner (the vendor) of its contract in both respects named, in that it had permitted the erection on a number of lots in said division of homes costing less than $1,500, by which the value of the lots purchased by the defendant were decreased, etc. It is also charged by the defendant in her answer that "the representations made by petitioner, as above set out, were made wilfully and fraudulently." We can disregard the word "wilfully," as used here; it is presumed that any statement made by a man is made wilfully. But the charge that these statements were made "fraudulently," without more, does not show fraud on the part of the vendor. It is a mere conclusion of the pleader. It may mean that the representations of the vendor were "fraudulent" because. he afterwards permitted a purchaser to erect a building other than a residence upon certain of the lots. Even if he did permit buildings other than residences to be erected upon some of the lots subsequently to the making of the contract which we have under consideration, that would not show fraud existing at the time of the making of the contract, or fraud pre-existent to the making of the contract on the part of the vendor. In the opinion of the majority it is said: "In our opinion the decision in *Printup* v. *Rome Land Co.*, 90 *Ga.* 180, controls our ruling in this case." I respectfully differ from that statement of the majority. On the contrary, the case just referred to illustrates and emphasizes the contention which I make in this dissent. The judgment in that case was reversed on the ground that the court erred in striking pleas which had been filed to a suit on'two promissory notes which had been given for lots of land that had been laid off in a subdivision near the City of Rome. The pleas stricken were, that on a day stated the plaintiff had a public sale of certain lots of land near the City of Rome, and the public was invited to the sale, and at the sale, which was conducted on the land being sold, plaintiff and its auctioneer, agents, and officers represented to defendant and other bidders that a dummy street-car line would be built and permanently maintained and operated through the land and lots then and there being offered for sale, and exhibited maps and plats showing the location and line of said car line, that

the dummy line was being built and was to be a permanent line, and the lots then being sold would thereby be of easy access and be of great value for residence and other purposes, and that arrangements had been made for the location and erection of manufacturing plants and factories in the immediate vicinity of the lots being sold; that, relying upon the representations and promises aforesaid, defendant at the sale bought two lots for $690, payable one fourth cash and the balance in equal instalments in one, two, and three years, with interest at six per cent. from date, and gave his notes for the deferred payments and paid the cash payment, and paid all of the deferred payments except the notes then being sued on; that plaintiff gave to defendant bonds for title to the lots, copies of which were attached to the plea; and that "The representations of defendant at the sale and the exhibition of said maps and plats were all wrongfully and deceitfully made for the purpose of inducing defendant and others to bid at the sale and to make sales of said lots, and the plaintiff and its agents then well knew said representations and promises were not in fact true and would not be carried out. The said dummy line has not been built, maintained, and operated, to the great injury and damage of defendant." Other fraudulent representations were also alleged in the plea, but enough is quoted to show that this plea sets forth deceit and fraud, which fraud was coexistent with the execution of the contract, and entered into the execution of the contract, and induced that contract; for it was alleged that the plaintiff and its agents "well knew said representations and promises were not in fact true and would not be carried out." I therefore do not think that that case is controlling in the instant case. Nor do I think it necessary to cite or quote from cases to sustain my position; for it rests upon a plain and well-established principle of law. I am authorized to say that Mr. Justice Hines concurs in this dissent.