48515. LINCOLN LAND COMPANY et al. v. PALFERY et al.

408

ARGUED SEPTEMBER 11, 1973 — DECIDED NOVEMBER 26, 1973 — REHEARING DENIED DECEMBER 6, 1973.

*Smith & Millikan, Harmon T. Smith, Jr., Heard, Leverett & Adams, E. Freeman Leverett,* for appellants.

*Telford, Stewart & Stephens, Charles W. Stephens,* for appellees.

DEEN, Judge. ■ ■ The evidence here shows certain things without dispute, such as that the three individual defendants Blades, Habit and Goodwin constituted all of the officers, stockholders and board of directors of Lincoln Land Company, and also all of the officers, stockholders and board of directors of Lakewood Corporation at all pertinent times; that Lincoln transferred all of its assets and liabilities to Lakewood except the management of the water system and that this removed any possibility of collection of damages out of Lincoln, which either was insolvent prior to the transfer or was rendered insolvent by the transfer. There was uncontested testimony that Lakewood was insolvent *after* the transfer, but it should be noted that over two thirds of the listed debts of Lincoln were comprised in a note from it to its officer Blades which was also shifted to Lakewood. No adequate reason was ever given for stripping Lincoln. One affidavit states this marks return of an unspecified development loan. It does not appear that Lakewood either gave or received anything as consideration for the assignment to it, but only that it remained an inert vehicle for the separation of Lincoln's financial affairs other than the management of the water system of the subdivision in which it had just finished selling the last few lots. Further, there is uncontroverted testimony that at this same time the water system itself was offered to a third party "at a ridiculously low price," according to the proposed purchaser, although he did not state the amount. At the time these negotiations took place there is some testimony to the effect that the individual defendants, as such stockholders, officers and board of directors, were aware that the aroused owners of the waterless lots were in fact contemplating legal action.

It is also uncontested that the corporation as such sold all of the lots in this subdivision to these plaintiffs, their predecessors in title, and others similarly situated, and that as to them all representations were made on corporate flyers and leaflets, as well as by the employees of the corporation, that water was abundantly available to the potential householder. It is true that these representations might have been made innocently during the first lot sales, but it is at least an authorized inference from the evidence as a whole that by 1966, when approximately half the lots were sold, the corporate management with knowledge that there was a

very severe unsolved water problem continued its mis-representations in this area and continued its sale of lots, thus aggravating the problem. Officers and directors of a corporation may be liable in an action of deceit for false statements in corporate documents, made or authorized by them, to persons who rely on such statements to their injury. It is not necessary that the representations be made directly to the complaining party, provided they are made in such a manner that he is entitled to act upon them. 19 AmJur2d 781, Corporations, § 1385. Summary judgment was denied in *Cato v. English,* 228 Ga. 120 (184 SE2d 161) to Cato, where he, as the owner of a controlling interest in Carriage Colony, Inc., either personally or through this or another corporation controlled by him caused misrepresentations regarding land use to be made by an agent of the corporation engaged in selling adjacent property, which the plaintiff relied on to his injury. From this may be inferred the rule that "an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein." Levi v. Schwartz, 201 Md. 575, 583 (95 A2d 322, 36 ALR2d 1241).

We are primarily concerned with two alleged fraudulent acts — the representation that the subdivision had an adequate water supply when in fact it did not, and the transfer of all of Lincoln's assets and liabilities (except the water system) to Lakewood in 1970. As to the first of these, we inquire particularly whether the defendants can be individually liable to the plaintiffs in fraud and deceit. Lincoln was incorporated in 1962, and most of the first system of wells were drilled in 1963. Lord purchased his lot in 1969; he was shown corporate literature representing adequate water and was also assured of this by a corporate saleswoman. Partain had the same experience in 1963, as did Edenfield. Palfery purchased from a previous owner in 1967. Boles purchased in 1965, was assured of water, and found water adequate until the next year. Others purchased, either direct from Lincoln or from other owners, up until January of 1972. While the individual defendants were not in Georgia during this period they were, as the sole stockholders, sole board of directors, and all of the officers, in charge of the affairs of the corporation and must be chargeable with the corporate literature, backed up by the assurances of sales

people, that there was available water in the water system which they were running. It is unimportant whether, under these circumstances, the plaintiffs purchased directly from Lincoln Land Company or from owners to whom Lincoln had sold, since during all of the time in which they purchased Lincoln was representing to the purchasing public that there was water. The evidence in its entirety is sufficient to authorize a finding that purchases of lots were made in reliance on these representations, that they were false, and that they were authorized and directed by Blades, Habit and Goodwin by and through their corporate conduit with knowledge that they were untrue, that there was insufficient water, and that it was highly likely that there would never be an adequate supply of water turned up, notwithstanding which fact they continued to sell lots. We therefore hold that the individual defendants, both as to allegations and proof, may be held liable on Count 1 charging fraudulent land sales by them with knowledge that the lots without water were substantially worthless. Other evidence is to the effect that by about 1966 some half of the lots had been sold and it might have been possible to service these lots with water, but the continued sale of the rest of the lots decreased the water supply pro rata for all lots, which was a violation of certain contractual duties which will be discussed later.

■ In August, 1970, all assets of Lincoln Land Company were transferred to Lakewood, again by action of the individual defendants who composed all stockholders, officers and board of directors of both companies. Lakewood gave nothing. If the note to Blades be counted, this action rendered Lakewood insolvent. If the note not be counted, it gave Lakewood all the assets from which the plaintiffs in this case might have recovered if they obtained a judgment against Lincoln. There was sufficient evidence to authorize a jury finding that Blades, Habit and Goodwin had authorized and carried out this transfer in fraud of creditors. Lakewood was accordingly properly made a party defendant, its liability, however, being limited to the value of the assets so transferred to it.

■ The Long Arm Statute (Code Ann. § 24-113.1) enables Georgia to exercise personal jurisdiction over nonresidents "as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated," including transacting business in this state. There is no doubt under our holding above that all defendants participated in these acts and the complaint so alleged. Cf. *Palm Beach & Properties v. Dingman,* 126 Ga. App. 17 (189 SE2d

906). Lakewood's liability, for example, arises out of the plaintiff's claim against Lincoln, and to the extent that it holds assets of Lincoln it would be liable. Cf. *J. C. Penney Co. v. Malouf Co.,* 230 Ga. 140 (196 SE2d 145). Nor (and this particularly relates to the individual defendants) is it necessary that they participated in the purchase and sale of lots while personally present *in Georgia,* since Georgia has adopted the Illinois rule that the tortious act is a composite of both negligence and damage, and where the damage occurs within the state, although caused by an act committed outside the state, the jurisdiction attaches. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58 (195 SE2d 399). The trial court properly held that jurisdiction was alleged, and subsequently (the jury having found against the defendants' plea to the jurisdiction) that the service was proper. There is an enumeration of error to the effect that defendants were improperly denied the right to have a separate trial of this issue prior to the trial of the case. However, the Long Arm Statute is sui generis in that venue depends in part on a demonstration that there is a valid claim for which relief may be granted. *Brown v. Olen,* 226 Ga. 492 (175 SE2d 838). This is, of course, what the litigation is all about, and we do not see how the defendants were harmed, where both issues were left for determination by the same jury under questions particularly directed both to the plea and the main case. See Code Ann. § 81A-112 (d) which leaves the time of trying such special defenses to the discretion of the trial judge.

■ ■ Lincoln Land Company entered into contracts with land purchasers, on their agreement to pay tap-on fees and monthly water bills, to "supply at all times and under adequate pressure a sufficient quantity of water to meet the reasonable needs of purchaser. Such water shall be of the quality and purity as shall meet the standards recommended by the Public Health Service Drinking Water Standards" promulgated by the Public Health Service, etc. That this promise constituted a covenant inuring to the benefit of subsequent privies in estate is evidenced by the following provision: "It is contemplated that either owner or purchaser may sell its or his rights under this contract to other parties, but in that event the new owner or new purchaser shall succeed to all the rights, benefits and obligations of the original party to this contract from whom he purchased the same without any further obligation." "The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on said contract." Code Ann. § 3-108. Even

before this statute was enacted contracts beneficial to a third person were recognized, and a third party beneficiary could sue in his own name if he were either a party to the contract or in privity. *Sybilla v. Connally*, 66 Ga. App. 678, 681 (18 SE2d 783). There is of course privity of estate between certain of the plaintiffs and the original purchasers and parties to the water contract from whom they purchased, and, even if there were no actual spelling out between these latter of the transfer of rights under the water contract it is almost a demanded conclusion that an intention to transfer the water rights to subsequent purchasers was implied; hence, it was also proper for the court to charge the definition of an implied contract and that parties may be as fully bound by an implied as by an express contract "where the intentions of the parties are not expressed, but an agreement in fact creating an obligation is implied or presumed from their act."

It is contended by the appellants that Lakewood Corporation and the individual defendants, not being parties to the water contract, could not be held on Count 2 for breach of contract either express or implied. This is not a viable objection in the state of this record. There was an enumeration of error (No. 6) to the overruling of motion for directed verdict generally on behalf of Lakewood, Habit, Blades and Goodwin, which was properly overruled, as we have observed before, because of the fraud count. Another enumeration (No. 10) is a joint complaint that a motion for directed verdict as to Count 2 for all defendants jointly was denied. Appellant also argues that this count of the complaint sought recovery on the basis of an express contract only, that the contract introduced in evidence was between one plaintiff (Partain) and one defendant (Lincoln) only, and that therefore the motion should have been sustained except as between these two parties. In the first place, the motion was not based on this premise. In the second, the argument that recovery was sought on an express contract and plaintiffs failed to prove the case as laid and therefore are not entitled to recover is not applicable here. Under the Civil Practice Rules "a plaintiff may sue on one theory and recover on another. The fact that this involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case.'" *Hirsch's v. Adams*, 117 Ga. App. 847, 848 (162 SE2d 243). Without detailing more evidence, we hold that from the testimony as a whole it is obvious that the sale of lots in this subdivision depended, among other things, on an adequate water supply, that it was the

intention of the seller to make no distinction between original purchasers and successors in title as to the availability of water, and that it was the testimony of sellers of individual lots previously purchased that they were passing on whatever rights the lots had in the common water supply.

■ Count 3 is also based on a breach of contract claim relating to a trust agreement between Lincoln and First National Bank of Gainesville which put the water supply in Lincoln's keeping until default, with the bank as trustee, for the beneficiary users, and gave certain rights to the beneficiaries (these plaintiffs and others in like case) following default. It does not, however, attempt to limit the rights of the beneficiaries to those granted under the contract (such as taking over and operating the system), even if it could have done so as to third parties not party to the trust agreement, which is most unlikely. The argument that the trust agreement *prevents* the plaintiffs, as beneficiaries, from a direct action is completely fallacious. Otherwise, what has been said regarding the water contracts is applicable to the trust agreement count also. Enumerations of error 11, 12 and 13 are without merit.

■ Count 4 related to nuisance, and here there was some difficulty in that the allegations of the complaint referred to "public nuisance" whereas at the pretrial hearing it appears that the parties understood that what they were talking about was a private nuisance. No public nuisance, of course, was involved; but there was enough testimony to raise a jury question on whether the deprivation of water resulted in decreasing the quality of living in this subdivision and the value and merchantability of the lots. Enumeration of error 26 complains that the court erred in permitting the plaintiffs to amend during the trial so as to raise the issue of private nuisance; we therefore conclude that the complaint was treated as though amended, and it appears from the pretrial order and various colloquies relating to the charge and disposition of motions that the parties understood this count would proceed on private nuisance; the court in fact correctly charged on private nuisance and eliminated any issue of public nuisance. Enumerated errors 9, 26 and 27 are without merit.

■ "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any . . . counterclaim." Code Ann. § 81A-142 (b). Separate trials cannot be justified where the effectual result is to require the defendant to try the same case twice. *Roesler v. Etheridge,* 125 Ga. App. 358 (187 SE2d 572). In that case a defendant sued in a two-car collision attempted to draw the

driver of the host automobile into the fray by a third party complaint. Obviously the same proof is to be offered; only a jury question as to causation appeared in either case, and basically a severance called for the same question to be decided twice. Here, in an extraordinarily complex legal situation involving 15 plaintiffs, four defendants, and a four-count complaint, the defendants seek by counterclaim to recover individual debits for tap-on fees and water bills, and, in some instances, damages for alleged acts detrimental to the system on the part of the plaintiffs. The theory of recovery, the proof necessary to sustain it, and the witnesses involved, are completely separate. The trial judge properly used his discretionary power to not further encumber the trial with issues which could be separated out and heard at another time. This disposes of enumerations 15, 16, 17 and 29.

■ Errors 19 through 22 are considered together as relating to the measure of damages. It is contended that the verdict of $50,000 was excessive, that it was influenced by inadmissible expert testimony that the best method of solving the problem would be not to drill more wells but to tap on to the water supply of the City of Gainesville, which would cost $50,000, and that testimony regarding diminution of rental value of the real estate affected was an improper measure. As to rental value, the testimony was at the least relevant to the nuisance count to the extent that failure to provide an adequate supply of water "works hurt, inconvenience, or damage." The injury can be abated at any time by providing an adequate water supply. The evidence not indicating that this is an impossibility, the nuisance is abatable rather than permanent. "Since the case is one in which the continuing trespass can be abated by the cessation of the same the depreciation of the value of the land is not the measure of actual damages but the amount shown by the evidence to have occurred." *Bishop v. Lamkin,* 221 Ga. 687 (7) (146 SE2d 772). This being so, rental value (loss of use) instead of market value was a proper measure. The evidence relating to solving the problem by cutting into the municipal water supply was relevant, for one reason, because if it were to be shown that no feasible method of solving the problem existed, a different measure of damages would be appropriate as for a permanent nuisance. The verdict, under all the evidence, was not excessive. The witness, a homeowner in the subdivision and real estate salesman in the area who testified that he was familiar with home rental values in the vicinity, was prima facie qualified to testify on this subject.

■ The statement of the defendant Habit on cross examination that "it was common knowledge" that the subdivision was having water problems was a conclusion, and was not responsive to the question asked. It was no error to strike this testimony on objection made.

■ Cashion, a self-styled expert in water systems who had been called in several times on the problems in this subdivision, and the witness to whom an offer of sale "at a ridiculously low price," as he stated, had been made, testified that on his last trip, shortly before or concurrent with the filing of this lawsuit, an adequate subterranean source had been discovered, was asked why repairs had not been made in 1966, followed by the question: "And you're telling me you don't remember this judge asking you three times in a row why didn't you do this in 1966, why didn't you do this before 1972?" Objection was immediately made and sustained on the ground the question was prejudicial, and counsel then moved for a mistrial because "this would be an expression of opinion on the part of the trial court." The motion was overruled and the jury advised that the question was improper, and again, in his general charge, the court cautioned that "if you thought you heard or saw me do or say anything during the course of this trial which seemed to indicate, hint, or suggest to you which of the parties should prevail . . . you would completely disregard that as· not so intended." The question here was of course improper as assuming a fact not in evidence — that is, that the trial judge had at some unspecified former time asked the questions referred to — and the jury was properly instructed that the attorney asking the question was proceeding improperly. We find the cautionary instructions adequate. The trial judge did not abuse his discretion in denying the motion. *Salmon v. Salmon,* 223 Ga. 129 (153 SE2d 719).

■ Was the action barred by the statute of limitation? The answers contained a defense that the rights of action asserted did not arise within the relevant limitation periods of four and six years. The appellants contend that since some of the plaintiffs' lots were purchased in either 1964, 1966, 1967 or 1969, the others not being shown and the complaint was filed in February, 1972, Partain was barred on all counts and the others would be affected in varying degrees depending on whether a written contract or an oral contract, fraud, or nuisance is involved. The question was never raised during the trial so far as we can discover, there was no request to charge this principle of law, and no objection that rules for ascertaining the statute of limitation were not included

in the general charge. The count on fraud, of course, runs from the discovery of the fraud, and this time is disputed. The nuisance, if the jury found a nuisance existed, would be continuing until abated. The written contract counts would include all but one of the plaintiffs so far as the evidence shows. None of these questions seem to have been insisted on at the trial. "Except as to matters of appellate procedure, the appellate courts are without jurisdiction to pass on a question concerning which the ruling of the trial judge was not invoked." *Durham v. Pitts,* 101 Ga. App. 437, 438 (114 SE2d 217). Enumeration of error 34 raises only the general question that the evidence shows all claims were barred as to all plaintiffs, which it did not. No reversible error appears.

■ Regardless of whether it is good practice to have the jury trying the case selected on a date prior to the commencement of the trial, the fact that this jury was selected on Wednesday, December 6, whereas the trial started the morning of Monday, December 11, there being no evidence of any attempt to influence or discuss the matter with any of them in the meantime, is not ground for reversal. Enumeration of error 30 and others not argued are considered abandoned.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*