### 54590. STATE OF GEORGIA v. MEREDITH CHEVROLET, INC. et al.

SHULMAN, Judge.

Appellant brought this action under the Fair Business Practices Act of 1975, Ga. L. 1975, p. 376 et seq. (Code Ann. § 106-1201 et seq.) (hereinafter, "FBPA"), alleging that appellees violated the Act by "rolling back"

the odometers (changing the reading on the odometer to show fewer miles of operation than have actually occurred) of 78 cars which they sold at private (not open to the general public) auction to retail car dealers. It has been stipulated that no consumers participated directly in these sales by appellees and, for the purposes of this appeal, that appellees did roll back the odometers of the cars in question. This appeal is from a grant of summary judgment for appellees.

1. Although the basis of the grant of summary judgment was a holding that the FBPA is not applicable to transactions between dealers, appellees assert that there are two additional reasons for which the judgment should be sustained.

A. Code Ann. § 106-1205 (c) provides that the administrator ". . . shall refer all complaints or inquiries concerning conduct specifically approved or prohibited by [certain enumerated departments] or other appropriate agency or official of this State to that agency or official for initial investigation and corrective action other than litigation." The licensing and regulation of automobile dealers, which appellees are, is entrusted to the Georgia Franchise Practices Commission, which has the authority to censure licensees or suspend or revoke their licenses for enumerated wrongdoings. Code Ann. § 84-6601 et seq. Appellees insist that the admitted failure of the administrator to make a referral in this case constitutes a bar to the suit because the language of the section is mandatory. We agree that the language is mandatory, but the conduct complained of here has not been ". . . specifically approved or prohibited . . ." by the Franchise Practices Commission. The conduct is made unlawful by an Act of our legislature. Ga. L. 1975, pp. 754, 755 (Code Ann. § 68-1828 (a)). Since the conduct involved here does not fall within the category referred to in section 5 (c), there was no requirement that the administrator refer the complaint or inquiry.

B. Section 7 (b) of the FBPA (Code Ann. § 106-1207 (b)) provides that the administrator ". . . shall, before initiating any legal proceedings as provided in this section, give notice in writing that such proceedings are contemplated and allow such person a reasonable

opportunity to appear before the administrator and execute an assurance of voluntary compliance as in this Chapter provided." In the order granting summary judgment, the trial court found that appellees had tendered an assurance of voluntary compliance which was rejected by the administrator as inadequate. Appellees contend that section 7 (b) is mandatory and that the Administrator had no authority to reject their assurance. This contention is unavailing when the section quoted above is considered along with section 12 of the Act (Code Ann. § 106-1212): "In the administration of this Chapter, the administrator *may* accept an assurance of voluntary compliance with respect to any act or practice deemed to be violative of the Chapter from any person who has engaged or was about to engage in such act or practice." (Emphasis supplied.) Appellees submit that the permissive wording of this section places it in direct conflict with the mandatory provisions of section 7 (b) and that this court should interpret section 12 to be mandatory as well. We disagree.

Adoption of appellees' proposed construction would render section 12 meaningless. "Every part of a statute must be reviewed in connection with the whole to harmonize all parts where practicable, it being presumed that the legislature did not intend for any part of a statute to be without meaning. [Cit.]" *City of Gainesville v. Smith,* 121 Ga. App. 117, 119 (173 SE2d 225). Although the legislature provided for procedures other than litigation (see, e.g., FBPA §§ 5 (c), 7 (b), and 10 (b)) to promote the stated objective that the proscribed conduct ". . . be swiftly stopped . . ." (FBPA § 1 (b)), we will not presume that the legislature expected all alleged malefactors to quickly reform themselves upon notice that their conduct had been called into question. If the legislature had chosen to repose so much confidence in the efficacy of administrative procedures, surely they would not have bothered to provide the administrator with the power to bring suit. See FBPA §§ 7, 15.

We hold that the reasonable interpretation of the scheme of assurances of voluntary compliance contained in the FBPA is that the administrator must provide an opportunity to execute such an assurance but that he may

reject an assurance he deems, in the exercise of his discretion, to be inadequate. The record here clearly shows that the administrator exercised his discretion. "The law is well settled that where public officials 'are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen.' [Cit.]" *Hudspeth v. Hall,* 113 Ga. 4, 7 (38 SE 358). Since appellees' motion for summary judgment did not address the issues of fraud, corruption or abuse of discretion, the administrator's rejection of appellees' assurance of voluntary compliance could not have served as a basis for summary adjudication for appellees.

2. Having disposed of the collateral issues appellees asserted as justification for summary judgment, we turn to consideration of the primary issue of this case: whether the conduct complained of here was within the scope of the FBPA. The trial court ruled that it was not, and we affirm that judgment.

In order for conduct to be actionable under the FBPA, it must be within that class of conduct made unlawful by Code Ann. § 106-1203 (a): "Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce . . ." Before determining whether the acts or practices are unfair or deceptive, the inquiry must be directed to the issue of whether the particular activity is within the regulatory scope of the Act, i.e., whether it occurred ". . . in the conduct of consumer transactions and consumer acts or practices. . ."

"[T]he FBPA is no panacea for the congenital ills of the marketplace . . ." Rothschild, "A Guide to Georgia's Fair Business Practices Act of 1975," 10 Ga. L. R. 917 (1976). The legislature has evidenced a clear intent to limit the scope of the Act to the consumer market. The model Act on which Code Ann. Ch. 106-12 was based extended its coverage to all commercial dealings, outlawing "unfair methods of competition and unfair or deceptive acts or practices in the conduct of *any* trade or commerce . . .," whereas the Georgia statute limits its

coverage to activities "... in the conduct of *consumer transactions and consumer acts or practices in* trade or commerce ..." Code Ann. § 106-1203 (a). (Emphasis supplied.) (See generally, Smith, "Georgia's Deceptive Trade Practices Legislation," 10 Ga. S. B. J. 281 (1973)).

Considering the definition of a consumer transaction in Code Ann. § 106-1202 (g), "... the sale, lease or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes," we find it clear that, under the stipulated facts of this case, no consumer transaction was involved. Therefore, in order to find appellees' activities to be within the regulatory prohibitions of the FBPA, we must find that it occurred "... in the conduct of ... consumer acts or practices ..." i.e., "acts or practices intended to encourage consumer transactions." Code Ann. § 106-1202 (h).

Taking into consideration the legislature's express and precise language which refines and limits the scope of the Act to consumer commerce, Code Ann. § 106-1203 (a), we hold that, to be subject to direct suit under the FBPA, the alleged offender must have done some volitional act to avail himself of the channels of consumer commerce. The allegedly offensive activity must have taken place "in the conduct of ... consumer acts or practices," i.e., within the context of the consumer marketplace.

In analyzing the context of a defendant's activities, two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact. It is only when the application of both of those factors indicates that the act or practice occurred within the context of the consumer marketplace that the fairness or deceptiveness of the act or practice need be examined. This is so because an act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.

To illustrate the application of the two-pronged standard by specific example, we would find that promotional advertising through a public medium addressed to the consuming public to create a demand for a product, if done in a deceptive manner, would be a violation of the FBPA; advertising in a limited circulation

commercial or professional journal, even though deceptive, would not be violative if the medium chosen reasonably restricted the audience (i.e., market) to nonconsumers, even though the product so advertised were eventually to reach the hands of consumers. Deceptive advertisements, even though in a public medium, addressed to the nonconsuming public are not in contravention of the Act if such advertisements cannot be said to reasonably tend to encourage consumer transactions. Offering a product for sale by opening one's door to the general public should trigger the prohibitions of the act if some deceptive act or practice were involved; private offers for sale, communicated between merchants, would not.

Applying the standard set out above to the stipulated facts of this case, we find there has been no violation of the FBPA by the appellees. That is so because, although the deceptive act alleged, which is the misrepresentation inherent in rolling back an odometer and selling the altered vehicle to a retailer, can reasonably be said to tend to encourage a consumer transaction (thus supplying the market impact factor), the medium chosen to introduce that act into the stream of commerce, i.e., a private sale limited to nonconsumers, is outside the context of *consumer* commerce. While the specific act would be unlawful, and in fact prohibited by the Act, the context in which it occurred is without the regulatory authority of the Act.

It must be noted that we have not, with this decision, relieved the appellees of all liability for their stipulated actions. The legislature has provided sanctions for rolling back odometers. See Code Ann. §§ 68-1828 (a), 84-6610, and 26-1706. In addition, if an action for damages is brought against a retailer who bought an altered car from the appellees and resold it to a consumer, appellees can be held liable to that retailer for his damages. Code Ann. § 106-1210 (e).

What this decision has done is make meaningful the carefully selected language in section 1203 (a) which defines the scope of the FBPA. If the legislature had intended a scope commensurate with the model Act, it would have adopted the language of that model. It chose

not to do so and we are neither willing nor empowered to expand the coverage of the Act to the commercial market as a whole. "We are thus not taking that journey . . . 'beyond the limits of judicial restraint and into the area of judicial legislation.' " *Redfern Meats, Inc. v. Hertz Corp.,* 134 Ga. App. 381, 390 (215 SE2d 10).

In summary, we have held that for an act or practice to come within the regulatory authority of the FBPA, it must occur within the context of consumer commerce. The activities of which appellees stand accused were in` the conduct of neither consumer transactions nor consumer acts or practices within the contemplation of the Act and did not, therefore, subject appellees to direct suit under the FBPA. The grant of summary judgment to appellees is affirmed on that basis.

*Judgment affirmed. Quillian, P. J., and Banke, J. concur.*

Argued October 11, 1977 — Decided February 3, 1978 — Rehearings denied February 22, 1978 — Cert. applied for.

*Arthur K. Bolton, Attorney General, Victor M. Baird, Assistant Attorney General,* for appellant.

*Smith & Shiver, Truett Smith, Troutman, Sanders, Lockerman & Ashmore, William G. Vance, Frederick E. Link,* for appellees.