60065. ZEEMAN et al. v. BLACK et al.

CARLEY, Judge.

In early 1977 appellants, the Zeemans, began to search for a home to purchase. During that search the Zeemans met appellee-Ledbetter, a real estate agent associated with the appellee-Emily Anne Smith Realty Company, Inc. (Smith Realty). Ledbetter showed the Zeemans appellee-Black's property which was for sale. It is apparently conceded that during the preliminary negotiations both Ledbetter and Black made representations that the lot was some 2.78 acres in size. A contract to purchase the property was executed and on April 7, 1977, the transaction was consummated.

Subsequent to the date of closing, the Zeemans discovered that their property contained only approximately 1.65 acres. Pursuant to Code Ann. § 106-1210 (b) the Zeemans made written demand on Black, Ledbetter and Smith Realty for damages, asserting that the misrepresentation as to the acreage was a violation of the Georgia Fair Business Practice Act (FBPA), Code Ann. § 106-1201 et seq. Thereafter the Zeemans filed the instant suit against Black, Ledbetter and Smith Realty, alleging a right of action under the FBPA. After discovery all parties moved for summary judgment. The trial court entered its order denying the Zeemans' motion and granting the motions of Black, Ledbetter and Smith Realty. The Zeemans appeal from this order.

The threshold question is whether the underlying transaction, the sale of the home, falls within the scope of the FBPA. Code Ann. § 106-1210 creates "a separate and distinct cause of action under its provisions. A consumer who is damaged thereby has an independent right to recover under the [FBPA], regardless of any other theory of recovery." *Attaway v. Tom's Auto Sales,* 144 Ga. App. 813, 815 (242 SE2d 740) (1978). However, while the aggrieved party is given a private remedy under the statute, it is important to note that the stated intent of the FBPA is to protect the public from acts and practices which are injurious to *consumers,* not to provide an additional remedy for private wrongs which do not and could not

affect the consuming public generally. Code Ann. § 106-1201 (b). Furthermore, not only is the FBPA itself couched in terms of protecting the public interest, the comparable federal law, the Federal Trade Commission Act, 15 USC § 45, is expressly made the appropriate standard by which the purpose and intent of the Georgia Act is to be effectuated, implemented and construed. Code Ann. §§ 106-1201 (c) and 106-1204 (a). The basic purpose of the applicable federal law is to protect the public. Federal Trade Comm. v. Cinderella Career &c. Schools, 404 F2d 1308 (D. C. Cir. 1968). The protection of the public is essential to justify the filing of a complaint under the federal law. Spiegel, Inc. v. Federal Trade Comm., 494 F2d 59 (7th Cir. 1974), cert. denied 419 U. S. 896 (95 SC 175, 42 LE2d 140). A practice, though unethical, is beyond the purview of the federal law if the public interest would not be served by proceeding thereunder. Northam Warren Corp. v. Federal Trade Comm., 59 F2d 196 (2nd Cir. 1932). The federal law may be invoked only in those instances where the unfair act or deceptive practice would have potential effect on the general consuming public. If the allegedly deceptive act or practice arises out of a controversy which is essentially private in its nature and context and has no effect or potential effect on the general consuming public, the federal law has no application. California Apparel Creators v. Wieder of Calif., 68 FSupp. 499 (S.D. N. Y. 1946). Based upon the foregoing, we find that "[t]he legislature has evidenced a clear intent to limit the scope of the [FBPA] to the consumer market . . . Taking into consideration the legislature's express and precise language which refines and limits the scope of the [FBPA] to consumer commerce . . . we hold that, to be subject to direct suit under the FBPA, the alleged offender must have done some volitional act to avail himself of the channels of consumer commerce. The allegedly offensive activity must have taken place 'in the conduct of . . . consumer acts or practices,' i.e., within the context of the consumer marketplace." *State of Ga. v. Meredith Chevrolet,* 145 Ga. App. 8, 11-12 (244 SE2d 15) (1978).

It is likewise equally clear that Code Ann. § 106-1210, providing for a private right of action, was enacted to give effect to "the intent of the General Assembly that such practices be swiftly stopped," Code Ann. § 106-1201 (b), and thus is part of the enforcement and regulatory scheme underlying the public protection policy of the FBPA and does not create an additional remedy for redress of private wrongs occurring outside the context of the public consumer marketplace. By its very language Code Ann. § 106-1210 gives a private right of action only to those who are damaged "as a result of consumer acts or practices in violation of [the FBPA]" and, as we have demonstrated, such a violation must be predicated upon wrongful

activity which has potential deleterious effect on the consuming public. Also that Code Ann. § 106-1210 provides for equitable injunctive relief and for recovery of treble damages for intentional violations is further evidence that the legislature intended that section to serve as an aid in enforcing the underlying public protection policy of the statute by enlisting the litigative assistance of those individual members of the consuming public damaged by unfair or deceptive acts or practices and not as the basis for a new private remedy for individuals who are damaged by acts or practices which have no potential for impact on the general consuming public. In this remedial aspect the private remedy afforded by the FBPA is analogous to the federal anti-trust law, 15 USC § 15, which authorizes similar suits by individuals designed to further the broad public interest transcending the private objectives of the parties. Silvercup Bakers v. Fink Baking Corp., 273 FSupp. 159 (S. D. N. Y. 1967).

Thus, we find that suits brought pursuant to Code Ann. § 106-1210 must serve the public interest and implement the purpose of the FBPA—the end to unfair or deceptive acts or practices in the public consumer marketplace. While a suit under Code Ann. § 106-1210 is brought in a plaintiff's individual capacity, it must be in his capacity as an individual member of the consuming public who has suffered damage as the result of an unfair or deceptive act or practice which had or has potential harmful effect on the general consuming public. One may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general. Code Ann. § 106-1210 does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction. In those circumstances, even though the plaintiff may be a "consumer" with regard to the transaction, if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any "act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA." State of Ga. v. Meredith Chevrolet, 145 Ga. App. 8, 12, supra. When a "consumer" suffers damage as the result of an unfair or deceptive act or practice which had or has potential impact solely upon him and which is not and could not be a source of damage to any other member of the consuming public, there is no public interest to be served by proceeding under the FBPA, and the aggrieved party is relegated to pursuit of relief under other statutory or common law

principles.

Having determined that the purpose and intent of the FBPA is protection of the public and that a private suit under Code Ann. § 106-1210 may be brought only if it implements that underlying purpose and intent, we turn to the resolution of whether summary judgment was properly granted in the instant case. In analyzing whether a defendant's allegedly wrongful activities are in violation of the FBPA to protect the public or an "isolated" incident not covered under the statute, "two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commmerce; and (b) the market on which the act or practice is reasonably intended to impact. It is only when the application of both those factors indicates that the act or practice occurred within the context of the consumer marketplace that the fairness or deceptiveness of the act or practice need be examined." *State of Ga. v. Meredith Chevrolet,* 145 Ga. App. 8, 12, supra.

Applying the above stated factors to the facts in the instant case, it is clear that summary judgment was properly granted to Black, the seller of the property. Based upon our interpretation of the underlying purpose and intent of the FBPA we construe the language of Code Ann. § 106-1203 (a), "in the conduct of any trade or commerce," as requiring that the alleged wrongful act in a "consumer transaction" occur in the context of the on-going business in which the defendant holds himself out to the public. Otherwise, the duty the breach of which is being sued upon would be one owed by the defendant not to the consuming public generally but to the individual "consumer" only. There is insufficient public interest in a single instance in which an owner undertakes to sell his own property to invoke the FBPA. Any misrepresentation made by the seller in the context of selling his own home is not made by the homeowner "in the conduct of any trade or business" but rather in the course of private negotiations between two individual parties who have countervailing rights and liabilities established under common law principles of contract, tort and property law. A misrepresentation made by a homeowner selling his own house is not likely to be a recurring "consumer" threat and, therefore, has no potential "impact" on the general consuming public. Thus when viewed in terms of the parties and the "impact," the sale of a home by the private homeowner is an isolated act by the individual and not a transaction by the homeowner in the conduct of trade or business. Pierson v. State of Delaware, 351 A2d 860 (Del. 1976); Allen v. Anderson, 557 P2d 24 (Wash. App. 1976); Lantner v. Carson, 373 NE2d 973 (Mass. 1978). The objective of the FBPA is the elimination of deceptive acts and practices in the "consumer marketplace." For there to be a "consumer marketplace"

the underlying transaction must involve a businessman as well as a consumer. Cf. *State of Ga. v. Meredith Chevrolet,* 145 Ga. App. 8, supra. It was not error to grant Black's motion.

A more difficult question is presented, however, with regard to Ledbetter, the agent, and her employer, Smith Realty. Under our analysis they are clearly "businessmen." However, while the alleged misrepresentation may have taken place in the course of conducting their "business," it was a single oral mispresentation made only to the Zeemans and to no one else. While we have no doubt that a single instance of an unfair or deceptive act or practice is a sufficient predicate upon which to base a claim for damages under Code Ann. § 106-1210 if the public consumer interest would be served thereby, there is serious doubt that the misrepresentation in the instant case had or could have had impact on any other market than the Zeemans. The misrepresentation related to a unique, nonfungible item, real property, and was specifically addressed to the inherent nature of that nonfungible property, the area encompassed within boundaries known to the Zeemans, and not a matter which was hidden, altered or otherwise unapparent on its face. Compare *Attaway v. Tom's Auto Sales,* 144 Ga. App. 813, supra. It is arguable that in order to trigger the applicability of the FBPA the misrepresentation concerning a single parcel of real property be made either in the context of a public medium addressed to the general public, *State of Ga. v. Meredith Chevrolet,* 145 Ga. App. 8, supra, or, if not made "public" be made (as by analogy was the case in *Attaway,* supra) in the context of the overall development of a larger tract of which the individual parcel is part. See generally *Campbell v. Empire Land Co.,* 163 Ga. 815 (137 SE 240) (1926); *Lincoln Land Co. v. Palfery,* 130 Ga. App. 407 (203 SE2d 597) (1973). Absent either public advertising or a misrepresentation such that the specifics of which, if repeated, could be harmful to future similarly situated buyers of real property, it is difficult to find sufficient "public policy" to authorize resort to the FBPA. A single oral misrepresentation made in the context of an isolated nondevelopmental sale of real property relating to unique facts concerning that property appears to be an essentially "private" controversy with no impact whatsoever on the consumer marketplace.

However, even assuming without deciding that the FBPA does apply to this transaction as to Ledbetter and Smith Realty, we find summary judgment was properly granted to them. Subsection (a) of Code Ann. § 106-1210 makes it clear that an individual action accrues to one "who suffers injury or damages *as a result* of consumer acts or practices in violation of [the FBPA] ... " (Emphasis supplied.) Thus a private FBPA claim has three elements: a violation of the Act,

causation, and injury. Subsection (b) of Code Ann. § 106-1210 further requires written notice as a prerequisite to filing suit "reasonably describing the unfair or deceptive act or practice *relied upon . . . "* (Emphasis supplied.) Since the Act contemplates notice of the deception relied upon as the prerequisite to a suit for recovery of damages resulting from that deception, we construe Code Ann. § 106-1210 as incorporating the "reliance" element of the common law tort of misrepresentation into the causation element of an individual claim under the FBPA. Rothchild, "A Guide to Georgia's Fair Business Practices Act of 1975," 10 Ga. L. R. 917, 926 (1976). Thus, under Code Ann. § 106-1210, a claimant who alleges the FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation. Therefore, under Code Ann. § 106-1210 when the alleged violation of the FBPA is a misrepresentation, the claimant is not entitled to recover if he had an equal and ample opportunity to ascertain the truth but failed to exercise proper diligence to do so. *Salter v. Brown,* 56 Ga. App. 792 (193 SE 903) (1937). " ' "[T]he FBPA is no panacea for the congenital ills of the marketplace . . ." ' [Cit.] The Act does not instantly convert every [misrepresentation] into a violation of the FBPA." *DeLoach v. Foremost Ins. Co.,* 147 Ga. App. 124, 125 (248 SE2d 193) (1978).

" 'Ordinarily the question whether the complaining party could have ascertained the falsity of the representations by proper diligence is for determination by the jury.' [Cit.]" *Pirkle v. Gurr,* 218 Ga. 424, 426 (128 SE2d 490) (1962). However, in the instant case the Zeemans' failure to exercise proper diligence appears as a matter of law. *Simmons v. Wooten,* 241 Ga. 518 (246 SE2d 639) (1978). It does not appear that there was either a confidential relation between the parties or that the Zeemans were prevented, by artifice or fraud, from making an inspection to determine the truth or falsity of the alleged representation. See *Westbrook v. Beusse,* 79 Ga. App. 654 (54 SE2d 693) (1949). While the Zeemans contend that the size of the lot was of great importance to them in purchasing a home, it is not disputed that before purchasing the home the Zeemans were shown around the property and were aware of the boundaries and at no time expressed any doubt that the area contained therein would be insufficient for their desired purposes. *Simmons v. Wooten,* 241 Ga. at 520, supra; *Finney v. Morris,* 116 Ga. 758 (42 SE 1020) (1902). The Zeemans made no independent effort to confirm the represented size of the lot. Neither the sales contract nor the deed made any specific reference to acreage. Compare *Estes v. Odom,* 91 Ga. 600 (18 SE 355) (1893); *Golden & Son v. Shaw & Co.,* 138 Ga. 379 (75 SE 424) (1912). However, the record demonstrates that the predecessor deeds in the

chain of title of the subject property made reference in the description of the property to plat book 14, page 14, DeKalb County Records. A copy of this recorded plat is included in the record on appeal and demonstrates that, on its face, the subject property contains 1.7 acres. Insofar as the description of the property is concerned, the Zeemans had "notice" of the contents of this plat. "It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed. [Cit.] A deed, for a description of the land conveyed, may refer to another deed or to a map, and the deed or map to which reference is thus made is considered as incorporated in the deed itself . . . The object of the registry acts is to enable purchasers to obtain accurate information respecting the title of any particular piece of land, and to accomplish this purpose it is essential that the description of the land in the conveyance should be reasonably certain and sufficient to enable subsequent purchasers to identify the premises intended to be conveyed; but while the description may be inaccurate, meager or erroneous, yet if it is expressed in such a manner or connected with such attendant circumstances as that a purchaser should be deemed to be put upon inquiry, if he fails to prosecute this inquiry he is chargeable with all the notice he might have obtained had he done so. [Cit.] Where one has sufficient information to lead him to a fact, he shall be deemed cognizant of it. [Cits.]" *Talmadge Bros. & Co. v. Interstate Bldg. & Loan Assn.,* 105 Ga. 550, 553-554 (31 SE 618) (1898). And even though the deed to the Zeemans itself described the property as being "Tract 15 of the Subdivision of the A. H. Harris Property as per plat recorded in Plat Book 14, page 14, DeKalb County Records . . ." and thus incorporated therein the information contained on that plat with regard to the 1.7 acres, the Zeemans raised no objections to the alleged deficiency until approximately two years thereafter. *Simmons v. Wooten,* supra; *Feingold v. McDonald Mtg. & Rlty. Co.,* 166 Ga. 838 (145 SE 90) (1928); *Browning v. Richardson,* 181 Ga. 413 (182 SE 516) (1935). In short, the evidence demonstrates that, while the Zeemans allege a misrepresentation as to the quantum of the land they failed to exercise any diligence to ascertain the acreage and blindly relied upon the representation as to this matter. *Holmes v. Walker,* 207 Ga. 582 (63 SE2d 359) (1951). The Zeemans accepted title and entered into possession pursuant to a deed which incorporated by reference a plat which accurately reflected the number of acres contained within the lot. We, therefore, conclude that the Zeemans' lack of diligence has been shown as a matter of law, and it was not error to grant Ledbetter and Smith

Realty summary judgment. *Simmons v. Wooten,* 241 Ga. 518, supra. The evidence showing that any damage the Zeemans may have suffered due to the alleged deficiency in acreage must be charged to their lack of diligence and not to their reliance upon any misrepresentation, they have not suffered any damage "as a result of" a violation of the FBPA.

Judgment affirmed. *Quillian, P. J., and Shulman, J., concur.*

ARGUED JUNE 16, 1980 — DECIDED OCTOBER 14, 1980.

*Kevin C. Greene, Daniel S. Reinhardt,* for appellants.
*Hugh E. Wright, John W. Gibson,* for appellees.