### A90A1455. BODYSLIMMER, INC. v. SANFORD.
(398 SE2d 840)

POPE, Judge.

Appellant/defendant BodySlimmer, Inc., appeals from the grant of appellee/plaintiff Suzanne Sanford's motion for partial declaratory judgment which, in effect, was a motion for partial summary judgment on the effectiveness of a release signed by Sanford purporting to exculpate BodySlimmer from damages for negligence. The trial court found that the release was ambiguous and therefore was not a bar to Sanford's action for negligence. The trial court further found that the release was void as against public policy.

The pertinent facts of this case are as follows: Sanford went to BodySlimmer, Inc., a weight-loss facility, to receive "treatment" for being overweight. BodySlimmer used a combination of diet and a "Thermo-BodySlimmer System" machine that applied deep heat to the body to effect weight loss. Before beginning the program, Sanford read and signed a document headed in bold type and in capital letters "IMPORTANT INFORMATION." The next line was in bold type and read: "Do not use Thermo-BodySlimmer if you are: [the remainder of the document was in regular type] 1. Taking medicines affecting blood pressure. . . . Consult your physician for advice. 2. Taking diuretic medications. . . . Consult your physician for advice. 3. If you have an illness such as severe diabetes where there may exist a reduced sensitivity to heat. Consult your physician for advice. 4. Preg-

nant or immediately following pregnancy. 5. Minor age or elderly. [After explaining the beneficial effects of drinking water, the document continued:] I have read the important health information. I have been familiarized with the Thermo-BodySlimmer treatment and I agree to use the Thermo-BodySlimmer at my own risk. Furthermore, I understand that the Thermo-BodySlimmer makes no warranties or representations regarding medical, therapeutic or cosmetic benefits either expressed or implied. I hereby release Thermo-Body-Slimmer, this facility and its employees from all claims now or in the future from any injury or damages in connection with the use of the Thermo-BodySlimmer." Shortly after beginning the program, Sanford suffered second degree burns while using the Thermo-BodySlimmer machine. She then instituted this action.

1. Although BodySlimmer enumerates seven errors, the only argument asserted in its brief on appeal is that the trial court erred in finding that the release was void as against public policy. Therefore, the remaining errors are deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2).

2. The basis of the trial court's ruling that the release violated public policy was that the Thermo-BodySlimmer System machine was regulated by the federal Food and Drug Administration, that the product was marketed as a public health service and that use of the product apparently requires the customer to place himself under the care and control of BodySlimmer's employees. The authority relied upon by the trial court was *Porubiansky v. Emory Univ.*, 156 Ga. App. 602 (275 SE2d 163) (1980), aff'd 248 Ga. 391 (282 SE2d 903) (1981). In *Porubiansky*, the Court of Appeals held unenforceable a contractual provision purporting to release a dentist and dental school from liability for professional negligence. The court applied six factors to determine whether the exculpatory clause in question should be held unenforceable as against public policy: "(1) It concerns a business of a type generally thought suitable for public regulation. (2) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. (3) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. (4) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. (5) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. (6) Finally, as a result of the transac-

tion, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness of the seller or his agents." (Identions omitted.) *Porubiansky*, supra at 607.

In the case of *Day v. Fantastic Fitness*, 190 Ga. App. 46 (378 SE2d 166) (1989), this court noted that exculpatory clauses in health or fitness club contracts do not violate public policy. See *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459 (364 SE2d 580) (1988); *Lovelace v. Figure Salon*, 179 Ga. App. 51 (1) (345 SE2d 139) (1986). The issue presented on appeal is whether the situation in the present case involving a weight loss establishment is analogous to that in *Porubiansky*, supra, or to the situation in *Day*, supra. We conclude that it is analogous to the situation of the health or fitness clubs and that *Day*, supra, controls.

Weight loss establishments are not businesses generally thought suitable for public regulation, nor is the service of great importance to the public (although it is desirable to have these services available). Though the marketing material for the Thermo-BodySlimmer System refers to the machine being approved by the Food and Drug Administration and claims that the machine provides effective treatment for weight loss, detoxification, improved skin tone and other therapeutic uses including relief of back pain, mental stress and arthritis, we note that the company carefully retracts all of these claims in a disclaimer of warranties on the page headed "IMPORTANT INFORMATION" described earlier in this opinion: "I understand that the Thermo-BodySlimmer makes no warranties or representations regarding *medical, therapeutic or cosmetic benefits. . . .*" (Emphasis supplied.) We further note that BodySlimmer also informs the purchaser that the slimming benefits of the machine are best achieved by combining use of the machine with a diet limiting daily caloric intake to no more than 1,200 calories a day. From the language on the information page advising the purchaser to "[c]onsult your physician for advice," one can also infer that BodySlimmer did not claim to have physicians on staff or as part of the program. Nor do we agree with the trial court that Sanford placed herself under the control of the agents or employees of BodySlimmer in a manner different from that described in *Lovelace*, supra, in which this court upheld a release. There, the injury allegedly resulted from use of a leg curling machine under the direct supervision of a club employee.

For these reasons, we hold that the exculpatory clause in the present case is not void as against public policy. Therefore, that portion of the trial court's order so holding is reversed. However, the trial court's finding that the release is ambiguous because it is unclear whether it applies to cases arising from negligence (which is not mentioned in the release) or only to cases arising from using the machine while under medication, pregnant, with severe diabetes, or while a mi-

nor or elderly and thus is not a bar to this action is affirmed because that enumeration of error was abandoned on appeal.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 14, 1990.

*John L. Watson, Jr.,* for appellant.
*Cofer & Beauchamp, Bryant K. Smith,* for appellee.