A03A1778. BONEM v. GOLF CLUB OF GEORGIA, INC.
(591 SE2d 462)

JOHNSON, Presiding Judge.

Golf Club of Georgia, Inc. sued former member Jim Bonem to collect on a "Promissory Note for installment plan of nonrefundable memberships." In his answer, Bonem denied that he was obligated under the note, and he filed a counterclaim for the $15,000 he had paid toward his initiation fee. The Club and Bonem each moved for

---

summary judgment. The trial court granted the Club's motions for summary judgment with respect to the Club's claim under the note and Bonem's counterclaim. Bonem appeals the grants of summary judgment to the Club and the denials of his motions for summary judgment. For reasons set forth below, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[2] Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[3]

The evidence shows that in June 2000, Bonem submitted an application for membership privileges in the Club. Bonem was presented with the choice of paying a "Refundable Initiation Deposit," which cost $55,000, or a "Non-Refundable Initiation Fee," which cost $45,000. The application states that membership privileges are contingent upon payment of the required amounts. It further provides, "if I elect to pay a Non-refundable Initiation Fee for my membership in the Club, then I will not be entitled to a return of any portion of the Initiation Fee." Bonem chose to pay the nonrefundable initiation fee.

Bonem's application was approved, and he executed and delivered the promissory note to the Club's predecessor in interest.[4] The note provided that Bonem would pay $15,000 as a down payment and two additional installment fees of $15,000, which were due on October 1, 2001, and October 1, 2002, for the purchase of a nonrefundable membership. The note also provided that it was secured by the maker's membership in the Club, and that it was a security agreement under the Uniform Commercial Code.

In September 2001, Bonem had a conversation with a Club employee that the employee believed was abusive. She complained to the board of directors, which considered the incident at its October 15, 2001 meeting. The board voted to suspend Bonem's membership for 60 days, and required that as a condition of the suspension Bonem must write a letter of apology to the employee. Bonem

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] Id.

[3] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

[4] The note was payable to Fuji Development Georgia, Ltd., but was later assigned to the Club.

decided he would not consent to the suspension or apologize to the employee. Bonem met with Club president Bill Fralic, and Bonem told Fralic that in light of what was occurring with the board that he would not pay the second installment on the note. Fralic told Bonem that he understood Bonem's position and that he "wouldn't write [a check for the second installment] either."

On January 4, 2002, the board wrote Bonem to inform him that he had failed to comply with the board's requests, including that Bonem write a letter of apology to the employee and that he pay his indebtedness to the Club. The letter also stated, "[e]ffective today, your membership is suspended due to non-payment of indebtedness to the Club. If your indebtedness is not paid your membership will be subject to termination as stated in the Club Bylaws." According to the general manager of the Club, Michael Kernicki, Bonem's membership was subsequently terminated under the automatic termination provisions of the Club bylaws because of Bonem's continuing delinquency in paying the note as well as $1,140 outstanding on his membership account. The Club's suit to collect on the note followed.

1. Bonem claims the trial court erred in granting summary judgment to the Club on its claim under the note. He contends the Club is not entitled to summary judgment (a) based on the language of the note, (b) because issues of fact remain as to the disposition of Bonem's membership as collateral, (c) because issues of fact remain as to whether there was adequate consideration for the note, and (d) because there is evidence the parties rescinded the membership contract underlying the note. We disagree.

(a) Under the terms of the note, in the event of a default in payment

> [the Club] shall be entitled to file suit against [Bonem] for the collection of all amounts due, or in the sole and absolute discretion of [the Club], cause [the Club] to terminate [Bonem's] membership in The Golf Club of Georgia without [Bonem] having any recourse whatsoever, and [the Club] shall be entitled to retain all initiation fees previously payed [sic] by [Bonem] (including any payments by [Bonem] hereunder) as liquidated damages.

Bonem contends the above provision required the Club to choose to sue on the note or terminate Bonem's Club membership, but not both. We believe this result is not consistent with the intent of the parties when the note is viewed as a whole and in context with the other agreements governing the terms of Bonem's Club membership. "The hallmark of contract construction is to ascertain the intention of

the parties."[5] "In discovering the intent of the parties, the whole instrument should be considered together, along with the surrounding circumstances."[6]

The terms of the note, the membership application, and the Club rules and regulations show that Bonem's obligation to pay his initiation fee was incurred when he joined the Club and was not contingent on the continuation of his membership during any period of time. For instance, it is expressly stated in both the application and the Club regulations that Bonem's initiation fee was not refundable. The note provides that it is "given as partial payment of the initiation fee under the terms of the [application]." The entire outstanding principal amount under the note is due and payable if the maker resigns. Accordingly, we conclude that it was never the intent of the parties that termination of Bonem's membership automatically relieve him from further obligation on the note. Rather, the original intent was that if Bonem defaulted under the note, the Club could sue on the note, or if it decided not to sue, then the Club could choose to terminate the membership and retain the amount already paid as liquidated damages. In this case, the Club elected to sue.

The parties have stipulated that the note's liquidated damages provision is an unenforceable penalty, but this does not affect the analysis.[7] For one thing, in a suit on a contract the nonbreaching party may recover actual damages in an amount greater than the designated amount of an unenforceable penalty.[8] It follows that the Club is not prevented from collecting amounts due on the note because it contains an unenforceable penalty. Furthermore, the evidence does not support a conclusion that the Club attempted to retain amounts previously paid as liquidated damages. It chose to sue on the note. According to the Club manager, Bonem was automatically terminated by the operation of the bylaws for his continuing failure to pay both the note and other amounts outstanding on his membership account. We cannot conclude that Bonem's membership was terminated pursuant to the Club's election to retain liquidated damages.

(b) Bonem contends that the Club is not entitled to summary judgment because issues of fact remain as to the disposition of the membership as collateral. The note states that it is a security agreement and that it is secured by Bonem's Club membership. It follows,

---

[5] (Citation and footnote omitted.) *York Ins. Co. v. Houston Wellness Center*, 261 Ga. App. 854 (583 SE2d 903) (2003).

[6] (Citations and punctuation omitted.) *Grange Mut. Cas. Co. v. DeMoonie*, 227 Ga. App. 812, 813 (3) (a) (490 SE2d 451) (1997).

[7] We do not rule on whether this provision was unenforceable absent the stipulation.

[8] *Alexander v. Steining*, 197 Ga. App. 328, 331-332 (I) (2) (398 SE2d 390) (1990).

Bonem argues, that the membership is collateral under Article 9 of the Uniform Commercial Code, and that the Club repossessed the collateral and was obligated to dispose of the membership in a commercially reasonable manner, or to restore it to Bonem, or to retain it and forgo any deficiency judgment.[9] We disagree.

Under the terms of the rules and regulations governing membership in the Club, a member acquires only a license to use the Club facilities. The member acquires no equitable interest in the Club, no vested right to use the Club, or any right to involvement in the management of the Club. The membership may not be transferred to a third party. The membership may be terminated for the member's failure to adhere to the Club rules.[10] Although evidence shows that membership in the Club was limited to 800 slots, Bonem's agreement with the Club cannot be reasonably interpreted to give Bonem a property interest in those slots. As Bonem admits in his appellate brief, the evidence is undisputed that the Club never attempts to sell or resell memberships that have been terminated. As the Club manager deposed, "We don't resell memberships. I mean — there isn't anything to resell." After Bonem's Club membership was terminated there was no collateral to repossess and sell, and so it follows that the Club could not have breached its obligations under the Uniform Commercial Code with respect to the disposition of collateral.[11]

(c) Bonem argues that the Club was not entitled to summary judgment because there is evidence that the Club failed to furnish adequate consideration for the parties' agreement. The evidence shows, he contends, that before the first installment on the note was due, the Club withdrew his right to use the Club facilities. Bonem maintains that he need not tender payment to a seller who has denied him access to the purchased goods or services, and that there is at least a partial failure of consideration.

We note that inadequacy of consideration is not in and of itself a defense to an action on a contract.[12] While failure of consideration is a defense,[13] we conclude that there was no failure of consideration because the note was given to pay for Bonem's initiation fee. According to his application for membership and the Club rules and regula-

---

[9] OCGA §§ 11-9-609; 11-9-610; *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 712 (3) (320 SE2d 784) (1984).

[10] According to the Club rules and regulations, a member may be entitled to recover a portion of his initiation "deposit" upon resignation or termination, but Bonem chose to acquire membership through an initiation "fee," which is not refundable.

[11] See, e.g., *Dixon v. Borg-Warner Acceptance Corp.*, 186 Ga. App. 843, 844 (368 SE2d 800) (1988) (collateral could not be repossessed by secured party and so the UCC provisions regarding the obligations of a secured party upon repossession of collateral were not applicable).

[12] *Littlegreen v. Gardner*, 208 Ga. 523 (2) (67 SE2d 713) (1951).

[13] OCGA § 11-3-303 (b).

tions, Bonem was required to pay his nonrefundable initiation fee in order to become a member and to gain use of the Club facilities, and the evidence is undisputed that he did become a member and he was granted access to use of the Club facilities as a member of the Club. Payment of the initiation fee did not guarantee Bonem continuation of his membership if he breached the Club rules, and Bonem was not entitled to any refund if his membership was terminated. As Bonem received full consideration for the note, the trial court did not err in granting summary judgment to the Club on account of evidence of a full or partial failure of consideration.

(d) Bonem argues that the Club is not entitled to summary judgment because there is evidence that the Club and Bonem mutually rescinded the agreement underlying the note. "Parties may by mutual consent abandon a contract so as to make it not thereafter binding."[14] However, Bonem can point to no evidence that would authorize a finder of fact to conclude that Bonem and the Club agreed to rescind Bonem's obligation under the note. Although evidence shows the Club president, in response to Bonem's pronouncement that he would not pay the note, told Bonem that he understood Bonem's position and, if in Bonem's position, would not write the Club a check, these comments do not show any intent on the part of the Club to abandon its rights.[15] To the contrary, the actions of the board show the Club's desire to enforce the note.

2. Bonem contends the trial court erred in denying his cross-motion for summary judgment. He contends that the language of the note, the Club's failure to sell Bonem's membership as collateral, the failure of consideration, and rescission of the transaction demand summary judgment in his favor. As we decided in Division 1 above, these claims do not preclude summary judgment to the Club. For the same reasons, we conclude that these claims do not demand summary judgment in Bonem's favor. The trial court did not err in denying summary judgment to Bonem on the Club's claim to collect on the note.

3. Bonem claims the trial court erred in granting summary judgment to the Club on his counterclaim for the $15,000 he paid toward his initiation fee. We disagree.

Bonem contends the Club would be unjustly enriched if the Club was allowed to keep his initiation fee, terminate his membership, and sell his membership slot to another. However "[u]njust enrichment is an equitable concept and applies when as a matter of fact

---

[14] (Citation and punctuation omitted.) *Delli-Gatti v. Mansfield*, 223 Ga. App. 76, 81 (4) (477 SE2d 134) (1996).

[15] See, e.g., *Abrams v. Massell*, 262 Ga. App. 761, 765 (4) (586 SE2d 435) (2003) (evidence did not show mutual intent to abandon contract).

there is no legal contract."[16] A legal contract governs the dispute at issue here, and Bonem may not rely on unjust enrichment.

Bonem further contends that the nonrefundable nature of his initiation fee is an unenforceable penalty. However, Bonem agreed that the fee would not be refunded and Bonem does not provide support for the proposition that such a fee is an unenforceable penalty.[17] And although Bonem and the Club stipulated that the note provision authorizing the Club to retain the amount of the initiation fee previously paid as liquidated damages is an unenforceable penalty, the Club remained entitled to recover actual damages and sued to recover them.[18] Bonem argues that the Club has incurred no actual damages because it may resell Bonem's membership slot. He also contends that a trier of fact must determine the Club's actual damages. But there is no fact question as to the amounts owed under the note, and Bonem cannot show any property interest or contractual right in these membership slots. The trial court did not err in granting summary judgment to the Club on Bonem's counterclaim.

4. Bonem lastly contends the trial court erred in denying his motion for summary judgment on his counterclaim. He contends that the Club would be unjustly enriched by the retention of the $15,000 he paid toward his initiation fee and because the Club wrongly retained the $15,000 as a penalty. As shown in Division 3, these arguments were insufficient to show that the trial court erred in granting summary judgment to the Club on Bonem's counterclaim. Neither do they show that the trial court erred in denying summary judgment to Bonem on his counterclaim.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED DECEMBER 5, 2003.

*Gibson, Deal & Fletcher, John W. Gibson, Michael R. Dunham,* for appellant.

*Meadows, Ichter & Trigg, James D. Meadows, Karen A. Hubbard,* for appellee.

---

[16] (Citation and punctuation omitted.) *St. Paul Mercury Ins. Co. v. Meeks,* 270 Ga. 136, 137 (1) (508 SE2d 646) (1998).

[17] *Bryant v. Carver State Bank,* 207 Ga. App. 659, 661 (2) (428 SE2d 621) (1993) (appellants surrendered their title and right to loan commitment fees when they paid them pursuant to the agreements which clearly provided that such fees were nonrefundable).

[18] See *Alexander,* supra at 331-332 (I) (2).