### A04A0662. TIISMANN v. LINDA MARTIN HOMES CORPORATION.
(625 SE2d 32)

BARNES, Judge.

In *Tiismann v. Linda Martin Homes Corp.*, 279 Ga. 137 (610 SE2d 68) (2005), the Supreme Court of Georgia reversed our previous decision in this appeal arising out of an action brought by Mart Tiismann against Linda Martin Homes Corporation (LMH) for, among other things, violating the Fair Business Practices Act (FBPA), OCGA § 10-1-390 et seq. See *Tiismann v. Linda Martin Homes Corp.*, 268 Ga. App. 787 (603 SE2d 45) (2004) (*Tiismann I*). In finding that the trial court did not err in its grant of summary judgment to LMH because Tiismann's FBPA claim was barred by the statute of limitation, we held that "Tiismann knew or should have known of the alleged FBPA violations when he signed the purchase agreement." Id. at 791 (1). In reversing this Court, the Supreme Court held that

Tiismann clearly did not suffer any actual damages at the time of the alleged FBPA violation. He could not have suffered any such damages at least until LMH conveyed the house to him without complying with code requirements or used the contractual language in question to deny liability. Therefore, Tiismann's cause of action under the FBPA did not accrue until less than two years prior to the date he filed suit. Accordingly, the statute of limitations did not bar his

---

[3] (Footnote omitted.) *Young v. State*, 267 Ga. App. 91, 92-93 (598 SE2d 840) (2004).

claim, and the grant of summary judgment in favor of LMH based on OCGA § 10-1-401 (a) (1) was erroneous.

*Tiismann v. Linda Martin Homes Corp.*, supra, 279 Ga. at 139-140.

Consequently, our previous opinion and judgment are vacated and set aside, and the decision of the Supreme Court is hereby made the decision of this Court as to the statute of limitation issue. However, "[t]he issues submitted by the remaining enumerations of error which were rendered moot by our previous decision are re-opened by the decision of the Supreme Court." *Stevens v. Wakefield*, 163 Ga. App. 40 (292 SE2d 516) (1982). Accordingly, we will address Tiismann's remaining enumerations.

The full facts underlying Tiismann's FBPA claim are set forth in *Tiismann I.* A brief overview, however, reveals that Tiismann's claim arose from a 1998 dispute with LMH over certain defects related to building code violations in the construction of his $837,000 home. Because of contract disputes, before closing, the parties entered into an amended contract which provided for arbitration of the disputes with Construction Arbitration Associates. Before arbitration, however, Tiismann filed the underlying action seeking to enjoin the arbitration, assign a different arbitrator, and make various claims for breach of contract and violations of the FBPA. The trial court refused to enjoin the arbitration, and, subsequently, Tiismann was awarded $205,664.88 for his claims related to the building code violations.

The only remaining claims were related to alleged violations of the FBPA. Tiismann contended that LMH violated the FBPA because its standard construction contract was duplicitous, in that it contained contradictory language which assured the home buyer that LMH would build the home in accordance with the building codes, but also incorporated a limited warranty disclaiming responsibility for any violations of the building codes. The trial court granted LMH summary judgment, finding not only that the statute of limitation barred the FBPA claim, but also that "[t]here exists no genuine issue of material facts as to Tiismann's actual or reasonable reliance as to a FBPA claim since there could not have been reasonable reliance as a matter of law when the conflicting terms were both before Tiismann at the time he signed." As the Supreme Court has held that Tiismann's claim was not barred by the running of the statute of limitation, we will consider whether the trial court erred in holding that Tiismann did not reasonably rely on the conflicting terms.

Tiismann contends that the trial court erred in granting summary judgment to LMH because (1) not all of the representations in the sales contract disclaimed liability for code violations, creating a jury question as to reasonable reliance, (2) LMH had a legal duty, independent of the contract, to comply with the building codes, (3) the

sales contract was executory and any representations in the contract were not of a present condition, but of a future action, (4) Tiismann reasonably relied on LMH's obligation to build to code because he knew the contractual disclaimer was invalid when he signed the contract, and (5) reasonable reliance is not an element of Tiismann's FBPA claim.

1. Tiismann argues that LMH had a legal duty, independent of the contract, to comply with the building codes. This contention is irrelevant to Tiismann's FBPA claim, which is based on the contradictory language in LMH's contract. Tiismann's breach of contract, negligent construction, and conversion claims were arbitrated, and he was awarded $205,664.88 in damages, which was subsequently verified by consent order and paid in full. This contention is meritless.

2. Tiismann contends that reasonable reliance is not an element of his claim, and that there was a jury question as to reasonable reliance because not all of the representations in the sales contract disclaimed liability for code violations. We find no merit to these claims.

Tiismann claims that reasonable reliance is only an element of a FBPA claim when the violation is based on a misrepresentation, rather than an act. He contends that reasonable reliance is not applicable in this circumstance because his case is premised upon the act of LMH's refusing responsibility for code violations, not for any misrepresentations.

Pretermitting whether Tiismann's contention has any legal basis, his assertion is particularly curious given the statement in his complaint alleging a violation of the FBPA in that he had "reasonably relied upon the certain representations set forth" in the purchase agreement. Moreover, if, as he maintains, his FBPA claim was based on LMH's refusal to take responsibility for the code violations in his home rather than on LMH's contractual misrepresentations, he cannot recover under the Act.

Generally,

if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any "act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA." [Cit.]

*Zeeman v. Black,* 156 Ga. App. 82, 84 (273 SE2d 910) (1980). The "act" of LMH's refusal to build Tiismann's home to code, while perhaps deceptive or unfair, would have no impact on the consumer marketplace unless the company routinely represented that it would build a home to code and did not do so. This was the basis for Tiismann's claim. "[A] private FBPA claim has three elements: a violation of the Act, causation, and injury." Id. at 86-87. When the alleged violation of the FBPA is a misrepresentation, as alleged in this case, the Act "incorporat[es] the 'reliance' element of the common law tort of misrepresentation into the causation element of an individual claim." Id. at 87. Accordingly, contrary to Tiismann's assertion, justifiable or reasonable reliance is an essential element of his FBPA claim. *Condon v. Kunse,* 208 Ga. App. 856, 859 (5) (432 SE2d 266) (1993).

Moreover, although Tiismann claims that there was a jury question as to reasonable reliance because not all of the representations in the sales contract disclaimed liability for code violations, any representations not related to the code violations would not implicate the FBPA. Tiismann complained that the purchase agreement stated that the "Property shall be completed in accordance with all applicable governmental regulations, ordinances, and codes," but also limited claims to express warranties, "including, but not limited to, any rights based on negligent construction, *code violations,* breach of contract or breach of warranty (other than based on the terms of the Limited Warranty)." (Emphasis supplied.) Any representations in the sales contract that did not disclaim liability for code violations were irrelevant to Tiismann's FBPA action, because the action is based on a conflict regarding code violations.

Further, while

> [o]rdinarily, the question whether the complaining party could have ascertained the falsity of the representations by proper diligence is for determination by the jury[,] in the instant case [Tiismann's] failure to exercise proper diligence appears as a matter of law. It does not appear that there was either a confidential relation between the parties or that [Tiismann was] prevented, by artifice or fraud, from making an inspection to determine the truth or falsity of the alleged representation.

(Citations and punctuation omitted.) *Zeeman v. Black,* supra, 156 Ga. App. at 87.

Therefore, Tiismann could not prove he reasonably relied on a material misrepresentation, and the trial court did not err in granting summary judgment to LMH on this ground.

3. We, likewise, find no merit in Tiismann's contentions that the sales contract was executory and any representations in the contract were not that of a present condition, but that of a future action, and that he reasonably relied on LMH's obligation to build to code because he knew when he signed the contract that the clause disclaiming responsibility for building to code was legally invalid.

Tiismann argues that this is not a case of misrepresentation as it would have been impossible for him to "discover the 'misrepresentation' because the contract was an executory agreement for the doing of something in the future." He maintains that when the contract was signed, no condition existed which contradicted the code compliance clause. We do not agree.

The condition that existed when the contract was signed was a misrepresentation caused by the duplicitous language in the LMH contract agreeing to build the house to code then expressly limiting its responsibility to do so. While the *damages* from this representation occurred when LMH refused to honor its obligation to build to code, the *misrepresentation* occurred when Tiismann signed the contract.

Tiismann cannot rely on the misrepresentation to bring a FBPA claim, then decry its presence in seeking to avoid the requirement of reasonable reliance. As noted before, we construe OCGA § 10-1-399 as incorporating the reliance element of the tort of misrepresentation into the causation element of an individual claim under the FBPA. "Therefore, under [OCGA § 10-1-399] when the alleged violation of the FBPA is a misrepresentation, the claimant is not entitled to recover if he had an equal and ample opportunity to ascertain the truth but failed to exercise proper diligence to do so." *Zeeman v. Black*, supra, 156 Ga. App. at 87.

"In the absence of a confidential relationship a party may not rely and act on the misrepresentations of an opposite party as to the contents of a written instrument where the party signing can read and where no artifice or fraud is practiced which prevents the party signing from reading the instrument." (Citation and punctuation omitted.) *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 165 (2) (407 SE2d 64) (1991).

The evidence does not show that there was a confidential relationship between Tiismann and LMH, or any artifice or fraud on the builder's part which prevented Tiismann from discovering the misrepresentations before he signed the contract.

We also find no merit to Tiismann's argument that he reasonably relied on the clause which maintained that the house would be built to code because the disclaimer was of no legal consequence. He appears to contend that, because he knew when he signed the contract that the disclaimer was invalid as a matter of law, then he

had reasonably relied on LMH's obligation to build the home to code. We can find no legal authority in support of Tiismann's novel theory, nor does he present any. If, indeed, Tiismann knew that the express warranty disclaiming responsibility for building to code was legally invalid at the time he signed it, the wiser course of action would have been to strike that portion of the contract. Moreover, Tiismann's actual knowledge of the alleged falsity further establishes that his reliance was unjustifiable. See *Forsyth v. Jim Walter Homes*, 177 Ga. App. 353 (1) (339 SE2d 350) (1985).

Accordingly, the trial court did not err in granting summary judgment to LMH and in finding that Tiismann could not have reasonably relied on the contradictory clauses as a matter of law when the conflicting terms were before him when he signed the contract.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

---

DECIDED NOVEMBER 17, 2005 —
RECONSIDERATION DENIED DECEMBER 14, 2005 —

*Weizenecker, Mottern & Fisher, Vaughn W. Fisher, Jr., Kimberly K. Perez, Womble, Carlyle, Sandridge & Rice, Frank G. Goldman*, for appellant.

*Michael A. Kessler*, for appellee.

*Sidney R. Barrett, Jr., Senior Assistant Attorney General, McKenna, Long & Aldridge, Samantha M. Rein*, amici curiae.

