### S06G0848. TIISMANN v. LINDA MARTIN HOMES CORPORATION.
(637 SE2d 14)

CARLEY, Justice.

In 1998, Linda Martin Homes Corporation (LMH) agreed to build a house and sell it to Mart Tiismann. After closing in 1999, Tiismann moved into the house and discovered several building code violations. Arbitration of his claims for breach of contract, negligence and conversion resulted in a substantial award, which LMH paid. In 2001, however, Tiismann filed an action seeking damages and other relief for LMH's alleged violation of the Fair Business Practices Act of 1975 (FBPA), OCGA § 10-1-390 et seq. This FBPA claim was based on allegedly conflicting language in the contract, which required LMH to complete construction "in accordance with all applicable governmental regulations, ordinances, and codes," but which also contained a limited warranty in lieu of various rights and remedies, including those based on code violations. LMH moved for summary judgment and raised several grounds in support of the motion. The trial court granted summary judgment based upon two of those grounds, concluding that the statute of limitations had run on Tiismann's FBPA claim and that, in any event, he could not have reasonably relied on the conflicting contractual provisions as a matter of law. On appeal, the Court of Appeals affirmed on the basis of LMH's statute of

limitations defense. *Tiismann v. Linda Martin Homes Corp.*, 268 Ga. App. 787 (603 SE2d 45) (2004) (*Tiismann I*). However, we granted certiorari and reversed the judgment and remanded the case for consideration of the alternative reasonable reliance ground. *Tiismann v. Linda Martin Homes Corp.*, 279 Ga. 137 (610 SE2d 68) (2005) (*Tiismann II*).

As to that ground, the trial court had found that

> "(t)here exists no genuine issue of material facts as to Tiismann's actual or reasonable reliance as to a FBPA claim since there could not have been reasonable reliance as a matter of law when the conflicting terms were both before Tiismann at the time he signed."

*Tiismann v. Linda Martin Homes Corp.*, 276 Ga. App. 846, 847 (625 SE2d 32) (2005) (*Tiismann III*). On remand, the Court of Appeals again affirmed, holding that reasonable reliance was an essential element of Tiismann's FBPA claim, and that " '[i]t does not appear that there was either a confidential relation between the parties or that (Tiismann was) prevented, by artifice or fraud, from making an inspection to determine the truth or falsity of the alleged representation.' [Cit.]" *Tiismann III*, supra at 849 (2). Tiismann applied for and we granted certiorari to review the opinion of the Court of Appeals.

1. Subsection (a) of OCGA § 10-1-399 creates a private cause of action for an individual "who suffers injury or damages . . . *as a result* of consumer acts or practices in violation of [the FBPA]," whereas subsection (b) of that statute requires, as a prerequisite to filing suit, written notice "reasonably describing the unfair or deceptive act or practice *relied upon* . . . ." (Emphasis supplied.) On remand, the Court of Appeals based its affirmance of the grant of summary judgment primarily upon *Zeeman v. Black*, 156 Ga. App. 82 (273 SE2d 910) (1980). In that case, OCGA § 10-1-399 was construed

> as incorporating the "reliance" element of the common law tort of misrepresentation into the causation element of an individual claim under the FBPA. [Cit.] Thus, under [OCGA § 10-1-399], a claimant who alleges the FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation. Therefore, under [OCGA § 10-1-399] when the alleged violation of the FBPA is a misrepresentation, the claimant is not entitled to recover if he had an equal and ample opportunity to ascertain the truth but failed to exercise proper diligence to do so. [Cit.] " ' "(T)he FBPA is no

panacea for the congenital ills of the marketplace . . . [.]" '
(Cit.) The Act does not instantly convert every (misrepresentation) into a violation of the FBPA." [Cit.]

*Zeeman v. Black*, supra at 87. Since *Zeeman* was decided, the General Assembly has amended OCGA § 10-1-399 several times, but never so as to alter the interpretation given the statute in that decision.

"Once the court interprets the statute, 'the interpretation . . . has become an integral part of the statute.' [Cits.] This having been done, (over a long period of history) any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute. The principle is 'particularly applicable where an amendment is presented to the legislature and . . . the statute is amended in other particulars.' " [Cit.]

*Mitchell v. State*, 239 Ga. 3, 6 (2) (235 SE2d 509) (1977). See also *Security Life Ins. Co. of America v. St. Paul Fire & Marine Ins. Co.*, 278 Ga. 800, 801 (1) (606 SE2d 855) (2004).

"Although the FBPA must be interpreted and construed consistently with . . . federal case law, such a construction does not override the express provisions of the statute which the Georgia legislature enacted. (Cits.) Misleading business practices in the marketplace do not necessarily cause measurable or compensable legal injury or give rise to a private right of action." [Cit.]

*Tiismann II*, supra at 139. Therefore, *Zeeman* continues to constitute viable authority as to the construction of OCGA § 10-1-399, and the Court of Appeals correctly recognized it as such. Compare OCGA § 10-1-397 (a), which authorizes the administrator of the FBPA to issue a cease and desist order or impose a civil penalty, "whether or not any person has actually been misled . . ."; *Agnew v. Great A&P Tea Co.*, 232 Ga. App. 708, 711 (2) (502 SE2d 735) (1998), recognizing that the "FBPA authorizes consumers to file complaints with the Consumer Advisory Board which in turn may take steps to facilitate investigation and corrective action, . . . 'whether or not any person has actually been misled.' [Cits.]"

2. " '[A] private FBPA claim has three elements: a violation of the Act, causation, and injury.' [Cits.]" *Tiismann II*, supra at 139. LMH's post-closing refusal to accept responsibility for remedying the code violations was not an unfair or deceptive act, since it was based on the

very language of the agreement that Tiismann had signed. The disclaimer provision was either a valid defense to LMH's contractual liability or it was not. See *Emory Univ. v. Porubiansky*, 248 Ga. 391 (282 SE2d 903) (1981) (provision relieving licensed professional from statutory duty of care is void as against public policy); *BodySlimmer v. Sanford*, 197 Ga. App. 565 (398 SE2d 840) (1990) (exculpatory clause in contract between consumer and weight loss establishment not violative of public policy). LMH's decision to litigate that issue was not unfair or deceptive within the meaning of the FBPA. Moreover, Tiismann obviously was not injured as the result of LMH's denial of responsibility for the code violations, since its defense ultimately proved unsuccessful and Tiismann was awarded a substantial sum in the arbitration action for those violations.

It should be noted at the outset that there is considerable doubt whether the contractual language at issue even constitutes a violation of the FBPA. One provision of the agreement merely states LMH's obligation to construct the home in accordance with the applicable building codes, whereas the other simply purports to limit LMH's legal liability for failing to do so. As previously noted, the latter provision was either valid or it was not, and the mere fact that, as a matter of contract law, it proved to be unenforceable by LMH does not necessarily make its inclusion in the agreement a deceptive business practice. To be deceptive, a business practice must have "the tendency or capacity to deceive." *Jeter v. Credit Bureau*, 760 F2d 1168, 1172 (II) (11th Cir. 1985) (construing the Federal Trade Commission Act (FTCA)). Disclaimers and qualifications are not deceptive if they are "sufficiently prominent and unambiguous to change the apparent meaning of [other unconditional] claims and to leave an accurate impression." *Removatron Intl. Corp. v. FTC*, 884 F2d 1489, 1497 (IV) (1st Cir. 1989) (construing the FTCA).

However, assuming, without deciding, that the contractual language could be found to be deceptive and, thus, constitute a violation of the FBPA, it was, at most, a misrepresentation as to whether LMH assumed or disclaimed the obligation to complete the house in accordance with the applicable building codes. Insofar as that alleged misrepresentation is concerned, it is undisputed that nothing was withheld from Tiismann or falsely stated to him and that the provisions which he contends were deceptive appear on the face of the agreement and were available for him to read and to accept or reject before signing. As the Court of Appeals correctly noted,

> "[i]n the absence of a confidential relationship a party may not rely and act on the misrepresentations of an opposite party as to the contents of a written instrument where the

party signing can read and where no artifice or fraud is practiced which prevents the party signing from reading the instrument." [Cit.]

*Tiismann III*, supra at 850 (3). The attempt to limit LMH's liability was disclosed and, having signed the agreement, Tiismann was free to challenge its enforceability. He did so, and ultimately succeeded in the arbitration proceeding.

Moreover, Tiismann acknowledged that he read the agreement, saw the disclaimer and "that he reasonably relied on LMH's obligation to build to code because he knew when he signed the contract that the clause disclaiming responsibility for building to code was legally invalid." *Tiismann III*, supra at 850 (3). Thus, as a matter of fact, as well as a matter of law, he cannot show that he placed any reliance on LMH's allegedly deceptive misrepresentation disclaiming the contractual obligation to construct the home pursuant to building code requirements. Instead, he signed the agreement in reliance on LMH's legal obligation to build to code notwithstanding the disclaimer. Under these circumstances, he cannot claim that he was deceived by LMH by the language in the contract. As aptly stated by the Court of Appeals,

[i]f, indeed, Tiismann knew that the express warranty disclaiming responsibility for building to code was legally invalid at the time he signed it, the wiser course of action would have been to strike that portion of the contract. Moreover, Tiismann's actual knowledge of the alleged falsity further establishes that his reliance was unjustifiable. [Cit.]

*Tiismann III*, supra at 851 (3). Had Tiismann acted on his actual knowledge and insisted on removal of the provision that he knew at the time to be invalid, he presumably could have avoided any subsequent litigation over the enforceability of the disclaimer.

When the alleged FBPA violation is a misrepresentation, the consumer must show that he exercised due diligence to ascertain the falsity of the statement. Otherwise, the cause of the injury is the consumer's lack of proper diligence, rather than the alleged FBPA violation. Ordinarily, the question of whether the consumer could have ascertained the falsity of the alleged misrepresentation is for the jury, but, in certain exceptional cases, the failure to exercise proper diligence may appear as a matter of law. See *Park Leasing Co. v. TWS*, 206 Ga. App. 864, 866 (1) (426 SE2d 620) (1992); *Zeeman v. Black*, supra at 87. Here, the alleged FBPA violation consists of a misrepresentation arising from inclusion of duplicitous language in a contract. However, Tiismann had an equal and ample opportunity to

read the agreement before signing and, in fact, he had actual knowledge of the purported falsity upon which he subsequently predicated the claim that LMH used a deceptive business practice. To fail to apply *Zeeman* and the principle of "reliance" discussed therein in a case such as this would mean that a literate consumer who signed a contract with full knowledge that it contained allegedly duplicitous and false provisions could recover damages pursuant to OCGA § 10-1-399, even though any subsequent injury was the result of his own failure to exercise proper diligence to protect himself. Such a result is contrary to the principle that OCGA § 10-1-399

> does not instantly convert every alleged breach of contract into a violation of the FBPA. Under the special and particular facts of this case, the alleged violation is not an [actionable] unlawful act or practice within the meaning of [OCGA § 10-1-393].

*DeLoach v. Foremost Ins. Co.*, 147 Ga. App. 124, 125 (1) (B) (248 SE2d 193) (1978). Tiismann had claims for breach of contract, negligent construction, and conversion, which he successfully asserted and which LMH satisfied. As for his FBPA claim, the Court of Appeals correctly affirmed the grant of LMH's motion for summary judgment on the ground that Tiismann could not, as a matter of law, demonstrate that he relied on the alleged deceptive business practice, because he not only had an opportunity to read the contract before signing it, he availed himself of that opportunity and entered into it with full knowledge of its contents.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 16, 2006.

*Weizenbecker, Mottern & Fisher, Vaughn W. Fisher, Jr.*, for appellant.

*Michael A. Kessler, Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General*, for appellee.