**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 28, 2013**

# In the Court of Appeals of Georgia

A13A0130. WRIGHT v. SAFARI CLUB INTERNATIONAL, INC. et al.

A13A0670. WRIGHT v. WATERBERG BIG GAME HUNTING LODGE OTJAHEWITA (PTY), LTD.

MCMILLIAN, Judge.

This is the second appearance of this case before this Court. As set forth in the previous appeal and as shown by the record, appellee Safari Club International, Inc. ("SCI") is "a charitable, non-profit organization dedicated to promoting wildlife conservation and protecting hunting opportunities." Each year SCI holds a convention and auction in which attendees have the opportunity to bid on various goods, services and hunting excursions, which primarily have been provided to SCI by third parties ("outfitters"). Appellant Joseph Jerry Wright had been a member of SCI since the 1970's and had attended numerous auctions throughout the years.

In 2007, Wright attended SCI's seminar in Reno, Nevada and was the successful bidder on a 14-day hunting and fishing trip to the Republic of South Africa and Namibia offered and conducted by Waterberg Big Game Hunting, Fishing & Photographic Safaris ("WABI"). WABI subsequently canceled portions of the safari, and Wright brought suit against SCI for breach of contract and violation of the Georgia Fair Business Practices Act.[1] *Wright v. Safari Club Intl.*, 307 Ga. App. 136, 137 (706 SE2d 84) (2010). SCI filed a motion to dismiss based on Wright's failure to join WABI as a party to the action. The trial court agreed that WABI was an indispensable party but found that WABI was not subject to the jurisdiction of the court; consequently, the trial court dismissed Wright's complaint against SCI. Wright appealed to this Court, and we reversed, finding that SCI had not met its burden of establishing that jurisdiction could not be obtained over WABI, and that, therefore, Wright should be given an opportunity to serve WABI and bring it before the court, at which time WABI could pose a challenge to the court's exercise of personal jurisdiction over it. Id. at 139.

---

[1] In addition to the $10,000 bid at the auction, Wright also sought to recover certain license and trophy fees he paid to WABI.

The case was returned to the trial court, and on January 31, 2011, Wright filed a motion for service of process on WABI, a motion for joinder and supporting affidavits, and a second amended complaint against SCI and WABI. SCI did not oppose Wright's motion, but requested that the trial court issue an order requiring Wright to serve WABI within a specified amount of time.

The trial court granted Wright's motion to join WABI and ordered that service be attempted in accordance with the Namibian Reciprocal Service of Civil Process Act of 1994 or, alternatively, that service be perfected in accordance with OCGA § 9-11-4 (f) (3) (B) (iii);[2] service was apparently perfected on WABI in accordance with Namibian law in May 2011 . On December 2, 2011, SCI filed a motion for summary judgment. On December 30, 2011, Wright filed a motion seeking a default judgment against WABI, which the trial court denied on March 14, 2012, based in part on Wright's failure to seek an order from the court requiring WABI to file an answer to Wright's amended complaint.

---

[2] That subsection applies to "Service upon persons in a foreign country" and applies, inter alia, when there is no internationally agreed means of service. The trial court also ordered Wright to perfect service upon WABI within sixty days, but subsequently granted Wright a thirty day extension because of problems Wright encountered with perfecting service on a party who resided on another continent.

On March 26, 2012, the trial court granted SCI's motion for summary judgment and made the judgment final as to SCI under OCGA § 9-11-54 (b). Wright timely filed a notice of appeal from that order, and that appeal was docketed in this Court as Case Number A13A0130. A few days later, the trial court denied Wright's request for an order directing WABI to answer his amended complaints. Further, the court directed Wright to address WABI's "status" in the case, noting in a footnote that "because it *appears* that [Wright] may have improperly added, by amendment, [WABI] without first obtaining leave of the court, [WABI] may be subject to dismissal . . . ."

Wright responded to the trial court's order, acknowledging that he should have first sought permission of the court before filing his second amended complaint to add WABI as a party, but requesting that the court exercise its discretion to approve his amended complaints and to order WABI to file its answer within 30 days of receipt of the trial court's order. On April 12, 2012, the trial court issued a "final" order in this case dismissing WABI because of Wright's failure to seek the court's leave prior to amending his complaint to add WABI. Wright filed another notice of appeal from this order, and that appeal has been docketed in this Court as Case Number A13A0670. We have now consolidated Wright's appeals for our review.

4

Wright contends the trial court erred by granting summary judgment to SCI on his breach of contract and FBPA claims.

Pertinent to this issue, and viewed in the light most favorable to Wright as the nonmovant,[3] the evidence shows that several months prior to the 2007 convention, SCI began sending its members, including Wright, various publications promoting the auction which contained SCI's "Auction Program Policies." The Program Policies were printed in either the back or back and front of the brochures, and included various subheadings, which were in all capitals and set off by bolder type and larger font. One of the subheadings was titled "Auction Buyer Policy," and provided that "All sales are final and there will be no exchanges or refunds on items or hunts."

Also relevant here, the evidence shows that immediately following the auction, Wright signed a one-page "Safari Club International Auction Sales Invoice and Buyer's Agreement" ("Buyer's Agreement"). The Buyer's Agreement contained a provision headed "Non-Warranty and Disclaimer of Liability." The heading was

---

[3] Although Wright argues in this first enumeration of error that the trial court failed to apply the "appropriate standard of deference for the non-moving party," we discern nothing to indicate the trial court did not use the correct standard and thus find this contention to be without merit.

printed in all capitals in larger, bolder print and contained language similar to that contained in the pre-auction promotion publications, including that the "purchase is non-refundable under any and all circumstances . . . ." Additionally, the Buyer's Agreement provided that SCI did not perform any of the services covered by the Buyer's Agreement and did not have any responsibility for the delivery or quality of the services or for any loss or damages related to the performance or non-performance of the services.

In granting summary judgment to SCI, the trial court found that the disclaimer was valid and enforceable as a matter of law, defeating Wright's breach of contract claim. Further, the trial court found that neither the fact of the disclaimers nor any other facts showed that SCI had engaged in deceptive and unfair trade practices, and thus also determined that SCI was entitled to summary judgment on Wright's FBPA claim. As more fully set forth below, Wright challenges these findings.

1. We first consider Wright's claims under the FBPA.[4]

(a) "A prerequisite to stating a claim for relief under the [FBPA] is the commission of some unfair act or deceptive practice in trade or commerce, from

---

[4] We have grouped Wright's arguments according to his claims, and our divisions do not necessarily correspond to the sequence of his enumerations of error.

6

which the Act is designed to protect the public. OCGA § 10-1-391 (a)." *Rivergate Corp. v. McIntosh*, 205 Ga. App. 189, 192 (421 SE2d 737) (1992).

> To be deceptive, a business practice must have 'the tendency or capacity to deceive. *Jeter v. Credit Bureau*, 760 F2d 1168, 1172 (II) (11th Cir. 1985) (construing the Federal Trade Commission Act (FTCA)). Disclaimers and qualifications are not deceptive if they are 'sufficiently prominent and unambiguous to change the apparent meaning of (other unconditional) claims and to leave an accurate impression." *Removatron Intl. Corp. v. FTC*, 884 F2d 1489, 1497 (IV) (1st Cir. 1989) (construing the FTCA).

*Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 140 (2) (637 SE2d 14) (2006).

Contrary to Wright's arguments on appeal, we find that the disclaimers in this case were sufficiently prominent and clear.[5] The Auction Program Policies appeared immediately before or immediately after the sections cataloging the items and services for sale, and each section, including the section titled "Auction Buyer Policy" was clearly delineated. Likewise, the heading in the Buyer's Agreement clearly and unambiguously identified the contents of that section as "Non-Warrant[ies] and *Disclaimer of Liability*," and the relevant text of the disclaimer was

---

[5] Wright does not contend and it does not appear that the disclaimers were ambiguous.

7

clearly written and easily understood. Moreover, Wright had the opportunity to read the Auction Buyer Policy containing the no refund policy before he attended the auction and the opportunity to read the Buyer's Agreement before he signed it.[6] "[I]t is undisputed that nothing was withheld from [Wright] or falsely stated to him and that the provisions which he contends were deceptive appear on the face of the agreement and were available for him to read and to accept or reject before signing." *Tiismann*, 281 Ga. at 140 (2).

Thus, the trial court did not err by finding that to the extent Wright's FBPA claim was based on the disclaimers, that claim failed as a matter of law.

(b) Moreover, although Wright attempts to graft definitions and subsections of the FBPA pertaining to "promotions" onto his claim, this case clearly does not involve a "promotion," as that term is defined in the FBPA,[7] and this argument is not

[6] Although Wright testified that he signed the Buyer's Agreement in a darkened room while an auction official illuminated the Agreement with a pen flashlight, he also testified that he could have asked to take the Agreement to a place where he could more easily read it but did not do so.

[7] OCGA § 10-1 392 (27) defines promotion as "any scheme or procedure for the promotion of consumer transactions whereby one or more prizes are distributed among persons who are required to be present at the place of business or are required to participate in a seminar, sales presentation, or any other presentation, . . . , in order to receive the prize to determine which, is any, prize they will receive." See also OCGA § 10-1-393 (b) (16) (defining the terms "conspicuous" as it applies to

8

pertinent.[8] Likewise, as Wright himself argues, this case does not come within the purview of Georgia's Uniform Commercial Code (UCC), OCGA § 11-1-101 et. seq., and we are not bound to analyze the viability of the disclaimers under those provisions. See *Tiismann*, 281 Ga. App. at 140 (2).

(c) Wright posits in a separate enumeration that the trial court erred by failing to consider whether it is "possible acts or practices beyond the disclaimer of liability could be violations of the FBPA." Although such a vague assertion of a possible claim is insufficient to withstand summary judgment, in his reply brief Wright asserts more specifically that the general practice of failing to give aggrieved buyers appropriate notice of their lack of remedies constituted an unfair or deceptive trade practice. But this appears to us to be just a re-assertion of his argument based on the insufficiency of the disclaimers, and presents nothing different for this Court to consider. In sum, we discern nothing deceptive, confusing or misleading about the disclaimers that appeared in the pre-auction publications or the disclaimer contained in the Buyer's Agreement that would give rise to a FBPA claim.

promotions).

[8] For this reason, we reject Wright's contention in his fifth enumeration of error that the trial court erred by failing to address his "FBPA Illustrative Example Argument" based on the FBPA promotion practice subsections.

9

2. (a) We turn now to Wright's breach of contract claim. Wright contends that there are several disputed issues of fact which preclude summary judgment on this claim, including generally "whether [SCI] can avoid contract liability," and his related argument that SCI's "assignment of its rights under the Buyer's Agreement to WABI does not excuse SCI from being liable under the contract." Without belaboring these points, we agree with SCI that these arguments "miss the mark." As SCI states in its brief to this Court, SCI did not assign or delegate its obligations under the Buyer's Agreement. Rather, the Buyer's Agreement expressly and plainly provided that the Safari trip was to be provided and conducted by WABI and that SCI had no responsibility to deliver the hunt; indeed Wright testified in his deposition that he understood that SCI was not delivering the hunt. And, as a general matter, disclaimers are enforceable under Georgia law unless they violate public policy, e.g., *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981); *Bodyslimmer, Inc. v. Sanford*, 197 Ga. App. 565, 566 (2) (398 SE2d 840) (1990), and the fact that SCI may have derived some benefit from Wright's purchase of the Safari did not render the disclaimers invalid.

(b) Wright also contends that there is a disputed issue of material fact concerning whether he substantially performed his obligations under the contract.

10

Assuming Wright is correct that this issue is disputed, it is neither material nor relevant to whether the trial court erred by finding that the Buyer's Agreement disclaimer was valid and enforceable so as to defeat Wright's breach of contract claim against SCI. This enumeration thus provides no basis for reversal of the trial court's order.

(c) Wright also contends that a jury should decide whether his prior dealings with SCI served to constitute a mutual departure from the terms of the contract and that a jury should decide "whether the new contract terms are binding on the parties."

As to this issue, Wright presented evidence that he had been the successful auction bidder over 30 and possibly in excess of 50 times at numerous auctions over the course of approximately 20 years, and that SCI had fully reimbursed him for trips cancelled by an outfitter on approximately four prior occasions. But Georgia law is well established that "matters outside a contract cannot be used to vary or explain the unambiguous terms of an agreement." *Choice Hotels Intl., Inc. v. Ocmulgee Fields, Inc.*, 222 Ga. App. 185, 186 (1) (474 SE2d 56) (1996). And the Buyer's Agreement specifically provided that it contained "the entire agreement between the parties and cannot be changed except by a written instrument subsequently executed by the parties hereto." Further, evidence of a departure or modification of a prior, separate

11

agreement does not constitute evidence of a mutual departure from the contract at issue here and has no bearing on this case. Id. at 187 (1); *Minor v. Citizens & So. Nat. Bank*, 177 Ga. App. 115, 117-118 (1) (338 SE2d 466) (1985).

3. Wright next contends that the trial court "incorrectly applied the UCC to determine the validity of the disclaimer" in the Buyer's Agreement. It is true, as both parties agree, that the UCC has no application here. But nowhere did the trial court specifically cite to the UCC in its summary judgment order, and the cases cited by the trial court for the proposition that non-refund disclaimers are valid and enforceable were not decided under the U.C.C. *Bonem v. Golf Club of Ga., Inc.*, 264 Ga. App. 573, 576 (3) (591 SE2d 462) (2003); *Matthews v. Riverside Academy*, 45 Ga. App. 30 (163 SE 238) (1932). Further, without more, the fact that the trial court used the term "conspicuous" in its order does not show that trial court applied the wrong legal standard in deciding the enforceability of the disclaimers.

4. Wright next contends that the trial court erred when it found the disclaimer valid and enforceable as a matter of law, arguing that the FBPA's provision prohibiting "unfair and deceptive acts or practices" controls this issue. However, the issue of whether the disclaimers might give rise to a claim under the FBPA is separate and apart from the issue of whether the disclaimers are enforceable as a matter of

12

contract law. *Tiismann*, 281 Ga. at 140 (2). And, in any event, as found in Division 1 we discern nothing deceptive or misleading about the disclaimers so as to support a claim under the FBPA.

Additionally, non-refund provisions are generally enforceable, and Wright has presented us with no reason why the non-refund provision was not enforceable in this case. *Bonem*, 264 Ga. App. at 576 (1) (a); *Matthews*, 45 Ga. App. at 30. To the contrary,

> [p]arties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts. *O'Brien Family Trust v. Glen Falls Ins. Co.,* 218 Ga. App. 379, 382 (3) (461 SE2d 311) (1995). While a legal excuse, such as fraud, may be shown for failing to read, the fraud must prevent the party from reading the contract. *Beckwith v. Peterson*, 227 Ga. 403, 404 (1) (181 SE2d 51) (1971).

*Wyatt v. Hertz Claim Mgt. Corp.*, 236 Ga. App. 292, 293 (1) (511 SE2d 630) (1999).

As stated above, Wright did not read the Buyer's Agreement before he signed it, and he has neither presented a reason why he could not have requested to read it nor evidence that he would have been prevented from reading it. Thus, he is bound by its contents, and the trial court did not err by granting summary judgment to SCI on Wright's breach of contract claim.

13

5. Wright challenges the dismissal of his complaint against WABI, arguing in three related enumerations of error that the trial court erred by finding that the procedural requirements for joinder were not satisfied, that the trial court impermissibly dismissed WABI sua sponte since joinder is a waivable defense which was not raised by WABI, and the trial court's dismissal of WABI runs afoul of practical concerns for judicial economy. Based on the particular circumstances of this case, we agree with Wright that the trial court's order dismissing WABI must be reversed.

OCGA § 9-11-15 (a) allows a party to amend his or her pleadings "as a matter of course and without leave of court at any time before the entry of a pretrial order." But, as our appellate courts have held on numerous occasions, when a party seeks to amend his complaint to *add a new party*, OCGA § 9-11-15 (a) must be read in pari materia with OCGA § 9-11-21, which requires a court order to add or drop parties. E.g., *Clover Realty Co. v. Todd*, 237 Ga. 821, 822 (229 SE2d 649) (1976); *Odion v. Varon*, 312 Ga. App. 242, 244-245 (3) (718 SE2d 23) (2011); *Valdosta Hotel Props. v. White*, 278 Ga. App. 206, 209-210 (1) (628 SE2d 642) (2006); *El Chico Restaurants, Inc. v. Transp. Ins. Co.,* 235 Ga. App. 427, 428 (2) (509 SE2d 681)

(1998); *Dollar Concrete Constr. Co. v. Watson*, 207 Ga. App. 452, 453 (428 SE2d 379) (1993); *Aircraft Radio Systems v. Von Schlegell*, 168 Ga. App. 109, 111 (2) (308 SE2d 211) (1983).

As we have explained,

OCGA § 9-11-21 parallels Rule 21 of the Federal Rules of Civil Procedure, and the Federal courts have long construed it to require the obtaining of leave of court when the plaintiff seeks to assert a claim against one who is not already a party to the proceedings. The adding or dropping of parties requires the exercise of a discretion by the court, and without the requirement that leave of court be obtained in doing so, there could be no exercise of that discretion. It is important that the status of the parties not be altered or changed save under the supervision of the court. Obtaining leave of court is a requisite.

(Citation and punctuation omitted.) *Dollar Concrete Constr. Co.*, 207 Ga. App. at 453.

Thus, an amendment to a complaint adding a new party without first obtaining leave of the court is without effect.[9] E.g., *Valdosta Hotel Props.,* 278 Ga. App. at 208-209, and cites; *Dollar Concrete*, 207 Ga. App. at 453-454, and cites. Although Wright

---

[9] We note that OCGA § 9-11-21 provides that parties may be added or dropped "on motion of any party or of [the court's] own initiative." Thus, a court may order a party joined or dropped even in the absence of a request.

acknowledges these general principles, he argues that the present case is distinguishable from those cases in which a party files an amended pleading adding a new party without ever seeking or receiving leave to do so, pointing to the fact that contemporaneously with filing his amended complaint, he also filed a motion to join WABI and the trial court did, in fact, grant his motion to add WABI as a party-defendant.

Although we adhere to the general proposition that the court must first grant permission before a party may be added by way of an amendment to a complaint, see *El Chico*, 235 Ga. App. at 427; *Carter v. Church*, 791 F. Supp. 297 (M.D. Ga. 1992), we agree that this case does not fall squarely within the line of cases in which permission was never given for adding the party. Rather, in this case, it is true, as Wright argues, that "[p]ermission to add [a] part[y] was required, and permission was given."[10] *El Chico*, 235 Ga. App. at 429.

Moreover, in addition to granting Wright's request for joinder, the court also granted Wright's motion for service of process on WABI, and specifically required Wright to perfect service on WABI within 60 days or *face dismissal of WABI*. Thus,

---

[10] We note, however, that the better course would have been to file a motion to add the party, along with a *proposed* amended complaint for the trial court's consideration, which could then be filed after the trial court had granted the motion.

16

it is clear, if not explicit, that the trial court believed at that time that no additional pleadings were required before Wright could attempt to serve WABI. Further it is clear, if not explicit, that the trial court considered WABI to have been added as a party since the order provided that WABI would be dismissed if not served within 60 days, an action that would be unnecessary if WABI had, in fact, never been named as a party. And Wright complied with the trial court's order by perfecting service on WABI in accordance with the laws of Namibia, obviously at some trouble and expense. Moreover, the case proceeded as if WABI was a party[11] until over a year after it granted joinder, the trial court, sua sponte, dismissed WABI for failure to seek permission before adding WABI by amended complaint. Under the particular facts of this case, we conclude that the trial court implicitly if not explicitly gave effect to Wright's amended complaint at the same time it granted the motion for joinder.

"Accordingly, we conclude that the [trial] court erred in dismissing the complaint as to [WABI after] permission to add was given. This conclusion is consistent with the notion of fairness to the parties, because the intent of the [trial court in entering the order allowing joinder] is clear, because [adherence to the] order

_____

[11] The order granting joinder was filed March 9, 2011 and the trial court issued the order dismissing WABI on April 12, 2012.

17

serves the purpose of judicial economy, and most importantly, because effectuating the intent of the [joinder] order avoids the inequitable result of dismissal on [a] hypertechnical basis that a party should have [refiled his amended complaint when it is clear that the trial court intended to give effect to the amended complaint at the time it granted the motion for joinder]." See *El Chico*, 235 Ga. App. at 429.

*Judgment affirmed in Case Number A13A0130. Judgment reversed in Case Number A13A0670. Andrews, P. J., and Dillard, J., concur.*